Wynne *vs.* The State of Georgia.

---

ANDERSON WYNNE, JR., plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1.  On an indictment for murder the court should not give the law of voluntary manslaughter in charge to the jury, if there be no evidence which would authorize the jury to consider that lower grade of homicide; but if

there be sufficient evidence to create a doubt, however slight, upon the point of whether the offense be murder or voluntary manslaughter, and if one of the defenses urged by defendant's counsel be, that the facts make a case of voluntary manslaughter, and if the attention of the court be called by counsel thereto, the court should instruct the jury upon the law of voluntary manslaughter as well as of murder; otherwise the jury would be deprived of their privilege to pass upon the facts, and the defendant would be denied his right to have them try every issue of fact.

2. It is not error to call the jury's attention to physical facts, such as the appearance of the pistol and cartridges used in the difficulty by the deceased, as circumstances which they may invoke to settle the conflict in the testimony of witnesses, especially where the court says distinctly in connection with this part of his charge that he neither expresses nor intimates any opinion as to the effect thereof.

3. The pistol, though fired off after the rencontre is over, may go to the jury for their inspection, and its condition as found at the close of the fight may be described by witnesses who saw it then and before it was altered by firing; but no experiment by firing, or otherwise, if made without defendant's consent, and after the homicide, should be admitted as evidence. It might result in the improper manufacture of testimony after the close of the affray.

4. Witnesses may testify about the appearance of the pistol and cartridges at the close of the fight, marks of indentation or the want of such marks, as indicating whether other barrels had been snapped or not, and all other facts connected with the pistol and cartridges unaltered from their condition at the close of the fight; and upon further testifying that they are familiar with such weapons and their use and practice, they may give their opinions upon the question, whether the appearance of the pistol, cartridges, marks and indentations, or their absence, indicate that other, and how many, barrels had been snapped; the jury, of course, being free to form their own opinion and draw their own conclusion from all the testimony.

5. The flight of the accused, where and when arrested, whether he resisted or not, how he was armed, and all the circumstances attending his arrest, are admissible to be considered by the jury for what they are worth.

Criminal law. Charge of court. Evidence. Before Judge Pottle. Hancock Superior Court. October Adjourned Term, 1875.

Reported in the opinion.

George F. Pierce; J. T. Jordan, for plaintiff in error.

Samuel Lumpkin, solicitor-general; Seaborn Reese; Charles W. DuBose, for the state.

JACKSON, Judge.

The defendant was indicted for murder in the county of Hancock. A colored man himself, he was charged with the murder of another man of color by the name of John Bruce. The homicide was perpetrated with a long pocket-knife. The fatal stab severed two of his ribs, cut his lungs in two, and entered his heart, causing death in from two to five minutes. The defendant was found guilty, and moved the court for a new trial on the grounds disclosed in the record; the court overruled the motion on all the grounds, and error is assigned here on each of them.

1. The first ground is that the court refused, as requested, to charge the law of voluntary manslaughter, and to read the sections of the Code bearing thereon. Taking the request altogether, we think it was properly refused, because the evidence hardly justified the language of the charge requested, that deceased "*interfered*" in the heated and angry quarrel which the accused had with Cornelius Brown and others. No portion of the evidence will justify the impression which would probably have been made that deceased interfered angrily or improperly in a heated quarrel or participated in any quarrel. All the testimony shows that he interposed for peace only. Therefore we think that this request, considered altogether, is not sound law applicable to the facts proven on the trial. But the important question is, not whether the court erred in his refusal to charge the precise language requested, but whether he should, under the facts here, have given in charge the law of voluntary manslaughter in his own language or in the language of the Code. His attention was called specifically to that law, and he said to the jury in his charge that he declined to give them in charge the law of voluntary manslaughter, because the case which the facts made was either murder or justifiable homicide, thus excluding from their consideration the whole law of voluntary manslaughter, and not permitting them to consider that grade of homicide at all. If the court below was right that under *no view* of the

facts proven could there possibly have been a verdict of guilty
of voluntary manslaughter, then he should not have given
the law in respect thereto in charge; but if the facts proven
created *a doubt, however slight,* that the case might be graded
below murder, then the court should have given the jury the
opportunity to pass upon that doubt. If he had been re-
quested to charge the law of involuntary manslaughter, he
should have declined to charge that law ; because it is impos-
sible that the accused could have been guilty of that offense
under the facts proven in this case. Or in a case where the
question is one of insanity alone, everybody admitting that if
the accused were sane the crime would be murder, in such a
case he should decline to charge the law of voluntary man-
slaughter ; but in a doubtful case, though the doubt be slight,
the court must not solve that doubt arising on the facts; for
if he does, and if this court affirm his judgment, that court
and this will decide *doubtful facts,* and the right of trial by
jury will be practically gone. This general subject has been
often before this court, and we think that every opinion and
judgment pronounced upon all the phases in which it has been
presented may be harmonized upon this view: that where it
is clear as noon-day that the accused must be guilty of mur-
der or not guilty at all, the court may decline to incumber the
case with immaterial and irrelevant law; but if there be cloud
or mist, or spots upon the sun's disk, and the defense is based
in part upon the obscurity of this light, and the attention of
the court is called thereto by counsel, then the court must
permit the jury to look at the whole law and all the facts, and
discover for themselves the light of the truth as it shines upon
the entire case. In the language of the present chief justice,
in *Washington vs. The State,* 36 *Georgia Reports,* 222, " if
there is *no evidence* which would authorize the jury to find a
verdict for any grade of homicide less than murder, then such
charge (on voluntary manslaughter) ought not to be given ;"
and in the language of the head-note, in *Crawford vs. The
State,* 12 *Georgia Reports,* 142, " where the defendant is put on
trial for murder and there is *any doubt* as to the grade of homi-

cide of which he is guilty, it is the duty of the court clearly and distinctly to instruct the jury as to the law, defining the several grades of homicide, and then leave it to the jury to find from the evidence of what particular grade he is guilty."

The decisions of this court on this subject will be found collated in the late work of Judge HOPKINS, on our penal laws, paragraph 850, *et seq.* ; and the question is discussed in many forms in the cases there cited. All the cases, we think, certainly nearly all of them, may be reconciled with each other and harmonize on the line above indicated.

The question in this case, then, is this : might not the jury, upon the facts proven, have found the accused guilty of voluntary manslaughter ? Should they not have been permitted to consider the testimony in the light of that law ? Is there not some doubt arising upon these facts that the accused, whilst not justifiable, may have acted upon a sudden heat of passion and without malice ? Is there not some evidence, which, if believed by them, would have created such a doubt that they should have been permitted to solve it ? We think that there is, not that we mean to say that the facts make him guilty of voluntary manslaughter; on that we express no opinion, as the case will be tried again, and the jury should be left free to find for themselves on the facts; all that we mean to say is, that the facts make doubts which they should have the opportunity of considering and solving. It was night, everything in more or less of darkness; the evidence was conflicting; the men had never had a previous quarrel; there was some testimony that blows were stricken, or that the deceased shoved the accused; the pistol was fired either before or immediately after the fatal stab with the knife; it might have been drawn, if not snapped or fired, before the stab; the accused might have seen it before it was snapped or fired at him, and therefore before he was assaulted, and have been too quick to be entirely justified, and yet in danger enough to use his knife in a sudden heat of passion ; all these facts and contradictions make such a *melee* of confusion and doubt as to make it proper for the court to instruct the jury

upon the law of murder, of voluntary manslaughter, and of justifiable homicide.  We are all of opinion that had the law of voluntary manslaughter been given in charge, and had the jury found a verdict of murder, the finding should not have been disturbed; but we all also think that the court should not have withheld from the jury the consideration of the inferior grade of homicide.

2.  The second ground for the motion is that the court erred in calling the attention of the jury to physical facts connected with the pistol and cartridges, as bearing upon the conflict of testimony.  We think the charge fair and impartial throughout; and as he qualified his reference to these physical facts by declining to express or intimate any opinion thereon, we see no error in this part of the charge.

3.  The third ground is that the court erred in allowing the pistol and cartridges to be placed before the jury for their inspection, over defendant's objections.  We think that the court should have permitted the jury to have and inspect the pistol, and that then the witnesses should have been questioned as to its condition at the end of the rencontre.  It had been fired off after the fight; we do not think that any new testimony should have been manufactured by firing off the pistol or otherwise changing its condition from what it was at the close of the fight, without defendant's consent; but we can see no objection to the pistol being exhibited to the jury and inspected by them, with testimony as to its appearance, how it was fired, the indentations or marks upon the cartridges indicating whether any, or how many barrels had been snapped, and everything about it as it was when the difficulty closed.

4.  The fourth ground is that the court allowed a witness to express his opinion whether the cartridges had been punctured by snapping them before they were fired.  We think that any witness, after stating the appearance of the pistol and cartridges with indentations or the absence of indentations, and that he was familiar with the use of the weapon from having practiced frequently with it, should have been permitted to express such an opinion, with the right of the jury, of

course, to form and find their own opinion upon all the evidence.

5. The last ground of the motion for a new trial is that the court erred in allowing the fact to be proven that when arrested in Wilkes county, a week after the difficulty, defendant had on his person and in his buggy, the knife with which the fatal blow was probably given, with stains of blood upon it, a double-barrel gun, and a five-shooter pistol. The flight of the accused, the time when and the place where arrested, the manner of the arrest, how he was armed, and whether he resisted, and all the circumstances connected with the arrest, we consider proper evidence to be submitted to the jury to be weighed by them for what they are worth. We reverse the judgment, and direct a new trial on the ground that the court erred in not instructing the jury upon the law of voluntary manslaughter, and in not permitting them to consider the facts in the light of that grade of the law of homicide.

Judgment reversed.