BENJAMIN J. STILES, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Where the main current of the evidence shows that defendant shot deceased twice with a pistol from an adjoining room, through the door, the room whence he shot being dark and the other lighted up, several feet being between the two; and that deceased, if armed at all, only had a common knife, and was not near enough defendant to use the knife upon him, and that deceased was not the assailant, and that defendant had made no effort, in good faith, to decline the combat; and where it was further proved that several days before, defendant had threatened to take the life of deceased :

*Held,* that the evidence would have authorized a verdict for murder; and where the verdict was only voluntary manslaughter, and the presiding judge refused a new trial, this court will not interfere.

2. Evidence of threats made four or five days before the homicide, is admissible to show malice.

3. Defendant cannot object to testimony of what transpired the same night at an adjoining village, when he himself first introduced it, though afterwards it be made to work against him.

4. Where a difficulty commenced at one groggery and terminated at another, the same night in the same village, all that transpired at both groggeries is admissible as *res gestæ*, though some interval of time may have intervened between the beginning and end of the rencounter.

5. It is not error in the court, in charging the jury on the subject of reasonable doubts, to tell them that they should reconcile all the testimony if possible, and if not, to believe those whom they thought most entitled to credit. The credibility of witnesses is matter peculiarly within the province of the jury.

6. In a contest, or personal rencounter, between two persons, where defendant set up the plea of acting in self-defense, sections 4331 and 4333 of the Code should be construed together; and it must not only appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge, but it must also appear that the slayer thought and believed, and had good reason to think and believe, that the danger was so urgent and pressing, *at the time of the killing,* that in order to save his own life, or prevent a felony on his person, the killing of the other was absolutely necessary; and it must appear also, either that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given.

Criminal law. Evidence. *Res gestæ.* Witness. Before Judge CLARK. Macon Superior Court. December Term, 1875.

Reported in the opinion.

HAWKINS & HAWKINS, for plaintiff in error.

C. F. CRISP, solicitor general, for the state.

JACKSON, Judge.

The defendant was indicted for the murder of William Crouch; he was found guilty of the offense of voluntary manslaughter; he moved for a new trial on the grounds stated in the record; the motion was overruled by the presiding judge, the defendant excepted, and the refusal to grant the new trial on all of the grounds in said motion is the error assigned.

1. The first ground is that the verdict was contrary to the evidence and the principles of justice, and without evidence to

Stiles *vs*. The State of Georgia.

sustain it.  The facts, in substance, were as follows: The defendant and Crouch, and two other young men, were at Montezuma at a ball or some similar frolic, where some little excitement arose between them, wherein defendant acted rather boisterously and violently.  Any serious difficulty, however, was suppressed, and they all got on the cars and crossed the river to Oglethorpe; there they got off, went up into the town, renewed their frolic for a time, and then got into a more serious quarrel, which resulted in the homicide of Crouch.  There is some conflict in the testimony whether Stiles, the defendant, who lived at Oglethorpe, invited the others to get off when they intended to go to Andersonville, or whether they got off on 'purpose to cause trouble.  It is certain, however, that they went into a groggery on the invitation of the defendant, to take a drink, and that after taking it they all went off and returned with fire-crackers, which they popped off in front of the groggery.  One of these crackers was fired off near defendant's person, at which he took offense, drew his pistol, and began threatening the party. After a little while he left, the others resuming their sport with the crackers, when he returned with a pistol in each hand, threatening to shoot.  The other young men were in the groggery, the bar-keeper stood in the door and told him to shoot him, to which defendant replied that he had nothing against *him*.  The young men then got out, and they all went towards the groggery of defendant's father, which was open, the defendant's father and brother being in it.  The defendant shot once on the way to his father's groggery, which was not far off.  They all entered the groggery—deceased, it seems, having entered first.  There were two rooms to this grocery; the front room was brightly lighted up, the rear room in darkness.  The defendant's father pushed him into the dark room, from which, through the door between the two rooms, he shot twice at deceased, who was near the outer door of the front room.  Both shots were fatal, and deceased died in half a minute.  There is some dispute whether deceased had a knife or not, and whether he was advancing to-

wards defendant.   It is quite certain that he 'must have been some distance from defendant when he was shot; and though the probabilities are, from all the testimony, that deceased had a knife, and that it was open, he could not have used it upon defendant, particularly with defendant's father between them. There is no evidence that deceased attempted to push defendant's father from between them, or that there was any difficulty at all between deceased and defendant's father.    There was evidence that defendant had threatened that he would take the life of deceased.

In the light of these facts, we think that this defendant has done remarkably well to escape the gallows.   If he had been found guilty of murder, and we had been called upon to review that verdict, we should have been constrained to say that there was evidence enough to support it.   Punishment, five years in the penitentiary, when the judge might have sentenced him for twenty years, is very light for such a crime, and shows that the presiding judge tempered justice with much mercy. The verdict is in accordance with the principles of justice— at least the defendant is the last man who ought to complain of it.

2.  The second ground is that the court erred in admitting the testimony of Laura Sykes.   She swore that four or five nights before, defendant came to her house and said he had traveled all through Texas, was afraid of no man, and that he intended to kill deceased, repeating the threat twice, and cursing and abusing the deceased.   We are utterly at a loss to see any legal reason why this testimony should have been excluded.   The threats were evidence of malice, and proper to be considered by the jury.

3.  The third ground is that the court erred in admitting the testimony as to what occurred at Montezuma.   The defendant cannot object to it, for he introduced the witness who testified about it, and for the purpose, doubtless, of showing that deceased had followed defendant to Oglethorpe after some trouble at Montezuma.

4. All that transpired at the both groggeries was properly admissible as part of the *res gestæ*.

5, 6. It was objected that the court said to the jury, after giving in chargea request of defendant very favorable to him, on the subject of circumstantial evidence, and the exclusion of every other reasonable hypothesis before there could be a conviction of murder, "if the state has satisfied you that Stiles killed Crouch, then the law presumed malice, and it is incumbent on Stiles to show his innocence." Even if this were not law, which is not conceded, it did not hurt the defendant, as he was not convicted of murder.

It is also objected that the court, after charging, at the request of defendant, that if the jury believed that deceased was advancing upon defendant to commit a serious personal injury upon him, and he shot to save his own life, the jury ought to find him not guilty, added these words: "And the danger was so urgent and pressing that he shot to save his own life," etc., etc. This seems to be the plain language of the Code as laid down in section 4333. So, also, it was objected that to the charge, if defendant was acting under the fears of a reasonable man when he shot, the court also added: "If you believe that his life or person was in pressing and urgent peril." So, also, it was objected that the court, in charging one of defendant's requests, left out the words, "if these things be so." We think those words were mere surplusage, repetition, and that the plain sense of the request was fully given. So, again, it was objected that the court, in charging reasonable doubts, told the jury they should, if they could, reconcile all the evidence, and if they could not, then that they should believe those most entitled to credit. It seems to us that this was right. The main ground of defendant's counsel, if we understand it, seems to be that section 4331 of the Code, in respect to the circumstances of the killing being sufficient to excite the fears of a reasonable man, was construed in connection with section 4333, which enacts that "if a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that in order to

save his own life the killing of the other was absolutely neces-
sary," and that the deceased was the assailant, etc., etc.   We
think that the two should be construed together, and that in
case of a rencounter like the facts here show, the jury should
be of the opinion that the defendant acted when he shot, un-
der circumstances calculated to excite the fears of a reasonable
man, and that he felt, at the moment he shot, and had reason so
to feel from the circumstances, that he must then shoot to save
his own life, or limb, or person, and this was fairly and fully
given to the jury.   We think, also, that to justify the killing
in a combat like this, that it should appear that the killed
was the assailant, or that the slayer had declined, or endeav-
ored to decline, the combat in good faith: Code, section 4333.
Taking the charge of the judge as a whole, we think the law
was fairly and fully given to the jury.

Judgment affirmed.