JACKSON *vs.* THE STATE OF GEORGIA.

76  473
†108  390
76  473
120  857

[This case was argued at the last term, and the decision reserved.]

1. If one of a number of penitentiary convicts, who were engaged in emptying and filling cans with water from a river, fell into the stream, and was not attempting escape; and if the guard in charge, as a reasonable man, must have so concluded by observing his efforts to return, if such were made, but nevertheless fired upon and killed him, it would be murder. But it is the duty of the guard to keep safely the convicts placed in his charge, and to prevent their escape; and therefore, if the circumstances were such as to lead him, as a reasonable man, honestly to conclude in his own mind that the convict was trying to escape, and that the necessity was upon him to shoot and kill in order to prevent the escape; and if, urged by this necessity pressing upon him in the discharge of official duty as a guard, he did shoot and kill to prevent the escape, then the homicide would be justifiable.

2. In order to justify the homicide of a convict by the guard, the circumstances must be such as to enable the jury to find that the guard, as a reasonable man, was impressed, at the moment of the killing, that the necessity was upon him to kill in order to prevent

the convict's escape, and that he did act and kill with intent solely to discharge duty and prevent escape. If there be proof of malice of any sort, satisfactory to the jury beyond a reasonable doubt, on the part of the guard towards his prisoner, then that should be weighed as a motive moving the guard, and from it the jury might conclude that the malicious intent, and not the intent to discharge duty and prevent escape, predominated in the breast of the guard, and made a case of murder.

(a.) Whether the guard halted the convict, or commanded him to stop or return, would also be a circumstance to be weighed with the other circumstances in the case.

3. There can be no involuntary manslaughter where the intention is to kill. If there is any evidence to raise a doubt, even though slight, as to the intention to kill, the court should give in charge the law of involuntary manslaughter, but if there is nothing to raise such a doubt, the failure to charge on that subject will not require a new trial.

(a.) A charge on the subject of involuntary manslaughter in the commission of a lawful act without due caution and circumspection should have been given in this case.

HALL and BLANDFORD, JJ., concurred in the judgment, but announced that, in their opinion, if the facts showed any crime, it was not greater than involuntary manslaughter in the commission of a lawful act without due caution and circumspection.

March 9, 1886.

Criminal Law. Charge of Court. Murder. Manslaughter. Penitentiary. Officers. Before Judge HAMMOND. Fulton Superior Court. March Term, 1885.

Reported in the decision.

W. T. NEWMAN; H. C. GLENN, for plaintiff in error.

CLIFFORD ANDERSON, attorney general, by J. H. LUMPKIN; C. D. HILL, solicitor general, for the state.

JACKSON, Chief Justice.

Dock Jackson was one of the guards of the convict camp on the Chattahoochee river near Atlanta. He was, with one other guard, in charge of some sixteen convicts

engaged in emptying and filling cans with water from the river, when the cry was heard, " Man in the river." He went down to the bank, from which he had called the other convicts to move higher up on the hill-side, and shot the deceased. He was convicted of murder, and on the denial of a new trial by the presiding judge, the case is before us for review here.

1. The great questions in the case are whether the convict thus shot was trying to escape, and if so, whether the killing is murder, or manslaughter, or justifiable homicide. On the issue of his attempting to escape or accidentally falling into the river, the evidence is conflicting, his fellow-convicts testifying with much unanimity, white and black, deceased being white, that he fell in accidentally and was trying to return; other witnesses and circumstances accompanying the transaction—such as the part of the body into which the buck-shot penetrated and the direction and scattering of the shot—led to the idea that he jumped or got in intentionally with the view of escaping and was doing his best to swim across the stream when shot by the guard. As the case will be tried again, we decline to express an opinion on the weight of the evidence on this point. Of course, if he was not attempting to escape, and if the accused, as a reasonable man must have so concluded by observing his efforts to return, if such were made, then the case is not justifiable homicide, nor any degree of manslaughter, but murder; and the verdict, with its sentence to the penitentiary for life, is right.

But the guard is on duty to keep safely convicts entrusted to him, and to prevent their escape. Therefore, if this convict was trying to escape, or if the circumstances were such as to lead the accused, the guard, as a reasonable man, honestly to conclude in his own mind that the convict was trying to escape, and that the necessity was upon him to shoot and kill in order to prevent the escape, and if, urged by this necessity pressing upon him in the discharge of official duty as guard, he did shoot and kill

to prevent the escape, then the homicide is justifiable. *Stiles vs. the State*, 57 *Ga.*, 183 (6).

2. So that the opinion of this court is, that in order to justify the homicide of a convict by the guard, the circumstances must be such as to enable the jury to find that the guard, as a reasonable man, was impressed, at the moment of the killing, that the necessity was upon him to kill in order to prevent the convict's escape, and that he did act and kill with intent solely to discharge duty and prevent escape.   If there be proof of malice of any sort satisfactory to the jury beyond a reasonable doubt, on the part of the guard towards his prisoner, then that should be weighed as a motive moving the guard, and from it the jury might conclude that the malicious intent, and not the intent to discharge duty and prevent escape, predominated in the guard's breast, and made a case of murder.   Whether the guard halted the convict, or commanded him to stop or return, would be a circumstance for the consideration of the jury, to be weighed with all other facts and circumstances attending the transaction.   The cardinal point, the controlling mode of reaching the law as applied to the facts of the case by the jury, under the charge of the court, is for them to put themselves just where the guard stood, to surround themselves as he was surrounded, to look at the convict as he did, and as reasonable men to find, by what they themselves would have done, what the prisoner, as a reasonable man, should have done under all the surroundings, with human life at stake on the one hand, and the pressure of the discharge of duty on the other.   The *bona fides* of the guard, or his *mala fides*, freedom from all malice, or malicious intent, recklessness of the life of a fellow-being, or determination to discharge his duty,—all these should be sought and sifted from the voluminous and contradictory (it may be) evidence, and the truth of motive and conduct elicited from it.   Wharton on Homicide, 214, *et seq.;* Reneau *vs.* State, 2 Am. Crim. R., 624; 1 East P. C., 298; 1 Hale P. C., 481, 488, etc.

3. My brethren are of opinion that the law, in respect to involuntary manslaughter in the commission of a lawful act without due caution and circumspection, should have been given to the jury, and that the refusal of the court, or its failure to present that grade of homicide, demands a new trial.*

There can be no involuntary manslaughter where the intention is to kill. Such is the necessary inference—indeed, the plain meaning of the definition thereof in our own Code, as in the English law everywhere, so far as I know; and the only doubt I have about the propriety of giving the law of involuntary manslaughter in charge in this case is that which I understand influenced the presiding judge, to-wit, that the evidence does not authorize it, because there is none of an intention on the part of the guard not to kill. I do not understand the other members of the court to differ with me on the law; but they think that the evidence is sufficient, under all the circumstances of the case, to authorize the charge, and that it should have been given. It may be that the statement of the accused, to the effect that he went round to head off the convict escaping, leaving the others in charge of the other guard, and ran and saw him within fifty or sixty feet, and shot, indicates the intention simply to discharge duty in preventing the escape and no intention to kill the convict, and that the shot was to disable and not to kill. It is rather a strained construction. But possibly the jury might have inferred that thus heading off the convict, and in the excitement of the moment, the guard shot without due caution and circumspection, and death resulted without his intending it.

There was some dispute between counsel about the statement of the accused, his counsel contending that it went to the extent of denying the intent to kill out and out, but the judge decided with the state, and it stands in

---

*One ground of the motion for new trial was that the court refused to give §4327 of the Code in charge, and to call the attention of the jury to the two grades of manslaughter, although his attention was called thereto.

the record as I have substantially given it, and must so stand, so far as we can consider the point.

Inasmuch, however, as my brethren are so decided in their convictions that there is enough testimony to authorize the charge of involuntary manslaughter, I strain a point and acquiesce in the view they take, basing that acquiescence on the inferences, rather remote, I confess, which the jury might have drawn from the statement of the accused in the record. Indeed, where there is evidence sufficient to raise a doubt, however slight, upon the point, whether the crime be murder or manslaughter, voluntary or involuntary, the court should instruct the jury upon these grades of manslaughter as well as murder. *Wynne, Jr., vs. The State*, 56 *Ga.*, 113. Such is substantially the rule laid down in that case. If there be no evidence at all upon the issue, then the charge should not be given; but if any, however slight, if enough to raise a doubt, then the charge should be given, is the principle there clearly established by a full bench. I cannot say that the evidence, or rather statement, which the jury could prefer to the evidence, might not create a doubt as between murder and involuntary manslaughter, and upon the authority of the case in the 56th Georgia Reports, as well as in deference to the very strong convictions of my associates, I assent to the grant of the new trial on this ground, where it is put by the entire court.

These two points, first, that the evidence is not sufficient to·support the verdict, on which we express no opinion, as the case will be tried again; and, secondly, that the law of involuntary manslaughter, in the commission of a lawful act without due caution and circumspection, should have been given, are those pressed before us, and on the last the new trial is ordered. Code, §§4327, 4328, 4329. No other error, certainly no other material error, is disclosed in the record.

Judgment reversed.

Hall and Blandford, Justices, concurred in the judgment, but added that, if any offence at all was shown, they thought the facts in the record did not make a stronger case than one of involuntary manslaughter in the commission of a lawful act, without due caution and circumspection. They furnished no written opinions.