HORTON *v.* THE STATE.

1. A party can not obtain a reversal for an error which he has invited, as by a request to charge, or by formal admission that a given principle is not involved in the case.
2. But the fact that one of defendant's counsel in arguing to the jury insisted that there was no manslaughter in the case, but that it was a case of self-defense, and another of his counsel contended that the defendant was justifiable because of the invasion of his house, did not deprive the defendant of the right to a charge on the subject of manslaughter, if it was otherwise demanded by the evidence.
3. The evidence which warranted the charge on the subject of self-defense also called for an instruction on the law of manslaughter as contained in the Penal Code, § 65.

Argued May 16, — Decided June 8, 1904.

Indictment for murder.    Before Judge Bartlett.    Paulding superior court.    March 18, 1904.

Horton was indicted for the murder of Pearson.    According to the testimony of Pearson's widow, she and her husband, who were near neighbors of Horton, heard Horton's wife crying, and heard Horton threatening her; and Pearson insisted on going to Horton's house.    Mrs. Pearson went there with him.    Horton asked them to be seated, and was apparently in good humor.    Pearson had been drinking, and, while there, took several more drinks of whisky, having sent one Johnson, whom he found there, to get a bottle of it.    Horton took one drink with him.    Pearson was lying on a bed, drunk, and Horton was seated in a chair, apparently asleep, when Pearson inquired who had a gun drawn on him. His wife and Horton told him that nobody had, but he insisted that somebody had a pistol drawn on him.    Finally Horton arose and got a pistol which was hanging on a nail of the wall, said to

Pearson, "You have said enough, and you are going to hush," and attempted to shoot him.    Pearson had risen from the bed, and Mrs. Pearson ran between them and tried to get her husband out of the door. .   Failing in this she pushed him to the floor.    He fell against the baseboard, with his head slightly raised, and, while he was in this position, Horton fired; the bullet, according to the testimony of a physician, entering the right side of the neck and ranging down diagonally in the direction of the left hip.    Mrs. Pearson was the sole eye-witness, Mrs. Horton having rushed out of the house, crying for help, before the shooting began.    The accused, in his statement, said that he and Pearson had had some difference about a purchase; in consequence of which Pearson had been abusive; that Pearson had been drinking for some time; and that, fearing trouble from him, he tried to avoid him; that on his (Horton's) way homeward, on the evening of the homicide, John-son proposed that they go by a certain store, but he (Horton) declined to do so, saying that Pearson was there, drinking, and he did not wish to have any trouble with him.    Both Johnson and a brother of Pearson testified that Horton proposed to go home by a route that did not pass Pearson's house, as he was afraid that Pearson would raise a row with him.    Horton said further, in his statement at the trial, that Pearson cursed him and threatened to kill him, and was advancing on him with a chair, in a stooping and threatening attitude, when he (Horton) shot him, and he shot in order to save himself; and that Pearson told him about having killed two other men, and he considered him a dangerous man. A physician testified that the range of the bullet in Pearson's body could have been produced by a shot fired at a man approaching in a stooping position.    Several witnesses testified that Horton at once went to the county jail to surrender himself, and that he said he had killed Pearson in self-defense, and because he was com-ing at him with a chair, and was trying to "run over" him. There was evidence that Pearson had said, while at Horton's house, and frequently before, during the same day, that he ex-pected to be killed with his shoes on.    Mrs. Pearson testified that she did not remember whether her husband had touched Horton or not; that if he did, it was not done violently; "perhaps he did, I am not positive that he did or didn't."    In another place she said "My husband didn't curse Horton; if he touched him at all, it was

not very roughly." There was evidence that she said that when it first began, she thought it would be a knock out, fist and skull fight until her husband got a chair and Horton got the pistol. This she denied, but she admitted that she said she thought at first that perhaps it would wear off in a bluff. Johnson testified that when Pearson entered Horton's house, Pearson said, "Damn a man, I say, that would curse his wife:" and both Johnson and Mrs. Pearson testified that, while there, Pearson cursed and said he could whip any man in McPherson, the place where the homicide occurred. There was evidence as to the character of the deceased for violence, and that he was larger than the accused. A verdict of guilty was rendered. One of the grounds of the motion for a new trial, to the overruling of which the accused excepted, was, that the court erred in failing to charge on the law as to manslaughter. As to this the court certifies that one of the counsel for the defendant "insisted that there was no manslaughter in the case; that it was a case of self-defense;" and that another of his counsel "insisted that he was justifiable because of invasion of defendant's home."

Cited, as to failure to charge on the law of manslaughter: *Ga. Rep.* 92/465; 106/676; 111/141, 211, 213; 114/7, 16, 94.

*A. J. Camp, H. C. Scoggins, F. M. Richards,* and *W. A. James,* for plaintiff in error.

*John C. Hart, attorney-general,* and *W. K. Fielder, solicitor-general,* contra.

LAMAR, J. No written request therefor having been presented, the failure to charge on the credibility or impeachment of witnesses affords no sufficient reason for the grant of a new trial. We find no error in any of the other assignments, except in that relating to the court's failure to charge on the subject of manslaughter. The judge charged the law of self-defense, and the evidence which made that proper also called for an instruction on the subject of manslaughter. Indeed, as we understand it, the trial judge did not base his omission to charge thereon upon the ground that there was no evidence to warrant the same, but from the note to the motion for a new trial it is inferable that his silence in this respect was due to the fact that one of defendant's counsel "insisted that there was no manslaughter in the case; that it was

a case of self-defense," and the other "insisted that he was justifiable because of invasion of defendant's home." Plaintiff in error is not responsible for the verbiage of the note, and therefore it is to be construed, not strictly against him, but liberally in his favor. We conclude that the note states what was the contention of counsel in argument, not a formal admission, as in *Coney* v. *State,* 90 *Ga.* 143, and *Griffin* v. *State,* 113 *Ga.* 281. It is true that a party can not obtain a reversal for an error which he has invited, as by a request to charge. *Quattlebaum* v. *State,* 119 *Ga.* 433. But because counsel insist that their client is not guilty of anything, he does not thereby lose the benefit of every defense warranted by the evidence. Parties are frequently held to their "theory of the case," and can not rely on one in the lower court and on another here. But testimony not sufficient to sustain a plea of self-defense may yet be sufficient to require a charge on the law applicable to manslaughter. If the jury had believed the entire statement of the accused, and that he acted in self-defense or under the fears of a reasonable man, they could have found him not guilty. They may have believed only a part of his statement, or only a part of that tending to confirm his statement, but that did not necessarily mean that they should convict of murder. It was necessary, in view of the record, that they should be instructed as to what they should do if they found that, while Pearson was making an attack, it was not a felonious assault, and also what they should do if they believed that Pearson was making an attack, but that it was not of a character sufficient to excite the fears of a reasonable man. As to these points, of course, we do not not mean to express any opinion, but under the evidence there were three possible verdicts : — murder, manslaughter, and justifiable homicide. The court properly charged as to the first and last, but failed to give any instructions as to the second. Considering all of the circumstances of the case, this omission deprived the defendant of an instruction on a vital and material matter, the right to which he did not lose because his counsel argued that he was completely justified in what he did, and it entitles him to a new trial. *Hatcher* v. *State,* 116 *Ga.* 619; *Kimball* v. *State,* 112 *Ga.* 541; *Chestnut* v. *State,* 112 *Ga.* 367 (4).

*Judgment reversed. All the Justices concur, except Candler, J., who dissents.*

CANDLER, J.   In my opinion the decision of the majority is in conflict with the rulings of this court in the cases of *Cochran* v. *State*, 113 *Ga.* 736, *Quattlebaum* v. *State*, 119 *Ga.* 433, *Harris* v. *State*, 120 *Ga.* 169, and *Robinson* v. *State*, post, 312, as well as with the sound and equitable principle that no man should be allowed to take advantage of an error which he has induced or invited.   From the certificate of the trial judge, which is conclusive, it appears that the accused " insisted that there was no manslaughter in the case," and he should not now be heard to argue that the refusal to charge the law relative to that offense was error.