## TANNER v. THE STATE.

1. If the evidence be sufficient to raise a theory of voluntary manslaughter, a failure to instruct the jury as to the law applicable thereto requires a reversal of the judgment refusing a new trial.

(a) Where the evidence presented a theory that after an interchange of words the decedent struck the defendant with a weapon not shown to be deadly, partially knocking him down, and the accused immediately fired upon him with a pistol, inflicting a mortal wound, a charge on the law of manslaughter was applicable.

2. On the trial of a defendant under an indictment for murder, both of his counsel in their argument insisted that the homicide was justifiable, though one of them suggested that the jury might be instructed by the court on the law of voluntary manslaughter. Before beginning his charge the court had a conference with counsel, in which they insisted that the homicide was justifiable, and in such conference they did not ask and refused to request an instruction on manslaughter. The court was of the opinion that a charge on voluntary manslaughter was not authorized by the evidence, and so told counsel, but offered to instruct the jury on that subject if counsel would consent or request it. Counsel refused to do this, and the court did not charge on the subject. *Held*, that this occurrence did not amount to a waiver by counsel of the duty of the court to charge the law of voluntary manslaughter, if the evidence demanded such a charge.

3. The exceptions to certain excerpts from the charge concern more particularly verbal niceties of expression rather than inaccuracies of statements of the law. They are not of a character which affected the fairness of the trial, and do not require special notice.

APRIL 12, 1916.

Indictment for murder. Before Judge Brand. Barrow superior court. December 30, 1915.

*P. Cooley* and *Lewis C. Russell*, for plaintiff in error.

*Clifford Walker,* attorney-general, *John B. Gamble,* solicitor-general, and *Mark Bolding,* contra.

EVANS, P. J. Charlie Tanner was convicted of the murder of Mark Sells, and recommended to mercy. The testimony for the State tended to show that on the first Saturday in May, 1915, the defendant had gone to a camp-ground in a buggy. Sometime during the day he fell asleep in the buggy. When he awoke he accused several persons of having stolen whisky from his buggy while he was asleep. Among those against whom accusation was made was the decedent, who denied that he had stolen any whisky, and the defendant immediately fled and was captured by the sheriff in the defendant shot him with a pistol without any provocation. The mountains of north Georgia. The defendant, on the other hand,

introduced a witness who testified that the decedent knocked the defendant to his knees with a pair of brass knucks, and as he was getting up he shot the decedent. This witness further testified that he heard the decedent and the defendant talking about whisky, but could not understand exactly what was said. No knucks were found, either upon the decedent or in the vicinity where he fell. It appeared that the defendant had a bruise under his eye, which the State contended was inflicted after he killed the decedent and ran away. It was contended by the defendant that the contusion was the result of the blow of the decedent with the knucks.

1. The controlling question in the case is, whether the court should have charged the law of voluntary manslaughter. The rule is well settled that where under the evidence the law of voluntary manslaughter is applicable, it is the duty of the court to charge the law upon that subject. *Bell* v. *State,* 130 *Ga.* 865 (61 S. E. 996) ; *Strickland* v. *State,* 133 *Ga.* 76 (65 S. E. 148). If the evidence on behalf of the defendant be true, it showed an actual assault was committed upon him by the decedent with a weapon not shown to be such as would likely produce death, and that the homicide took place while that assault was in progress; and the law of voluntary manslaughter was involved, and it should have been given in charge to the jury. *Dennis* v. *State,* 93 *Ga.* 303 (20 S. E. 315) ; *Green* v. *State,* 124 *Ga.* 343 (52 S. E. 431). There was only one shot fired, and a witness for the accused testified that the defendant shot the decedent after having been assaulted with brass knucks. We can not say as a matter of law that brass knucks is a deadly weapon. There was no evidence tending to show that the knucks was a weapon likely to produce death. If the defendant killed the decedent to prevent the commission of a serious injury less than a felony upon his person, the crime would not be murder, but voluntary manslaughter.

2. In certifying the ground of the motion for new trial complaining of the refusal to charge the law of voluntary manslaughter the court appended the following certificate: "During the trial of this defendant the court called counsel representing him to the stand, and asked them to inform the court whether or not they considered manslaughter in this case, and whether they desired the court to charge on this grade of homicide. This was

done, among other reasons, because P. Cooley, Esq., who had made the opening argument for the defendant, took the position before the jury that the defendant was absolutely justified in taking the life of deceased. While L. C. Russell, Esq., was arguing the case he said something to the jury about manslaughter and that the court might charge thereon, but took the same position as his associate, to wit: that the homicide was justifiable. In this conference both of defendant's counsel insisted that the homicide was justifiable, and that they did not ask, and refused to request the court to charge manslaughter. While the court was of the opinion that this grade of homicide was not included, and so told defendant's counsel, still it offered to charge the same if counsel would consent or request it. This was refused. For these reasons manslaughter was not charged, their position being defendant was guilty of murder or nothing, as the court understood." We do not understand from the court's certificate that there was any statement or request by counsel to refrain from charging the law of voluntary manslaughter. When court inquired of counsel, in view of their argument before the jury, whether the jury should be instructed on the law of voluntary manslaughter, they replied that they did not ask for such instruction, and refused to request of the court such instruction. This was tantamount to saying that they insisted upon the legal right of their client, and it was for the court to determine the propriety of making such an instruction. If defendant's counsel had assured the court that a charge upon the subject of voluntary manslaughter was neither applicable nor desired, it would not be ground for reversing the judgment, although under some of the evidence that phase of homicide was presented. *Caesar* v. *State,* 127 *Ga.* 710 (57 S. E. 66) ; *Steed* v. *State,* 123 *Ga.* 569 (51 S. E. 627). Though counsel for the defendant may argue to the jury that under the evidence his client should be acquitted, the court is not relieved of the duty of charging the intermediate grades of homicide, if they are presented by the evidence. In the case of *Horton* v. *State,* 120 *Ga.* 307 (47 S. E. 969), one of the defendant's counsel in his argument insisted that there was no manslaughter in the case, but that it was a case of self-defense. Another of his counsel contended that the defendant was justifiable because of the invasion of his house; and the court ruled that such argument by counsel did not deprive the defendant

of the right to a charge on the subject of manslaughter, if it was demanded by the evidence. We do not think that what transpired in the conference between the court and counsel for the defendant absolved the court from the duty of instructing the jury on the subject of voluntary manslaughter.

3. The exceptions to certain excerpts from the charge concern more particularly verbal niceties of expression rather than inaccuracies of statements of the law. They are not of a character which affected the fairness of the trial, and do not require special notice.

*Judgment reversed. All the Justices concur.*