## 9076.  TANNER *v.* THE STATE.

There was ample evidence to authorize an instruction to the jury on the law of voluntary manslaughter.  The judge's charge was full and fair; and no reason appears for disturbing the verdict.

    DECIDED NOVEMBER 1, 1917.

Indictment for murder; conviction of manslaughter; from Barrow superior court—Judge Cobb.  July 11, 1917.

*P. Cooley, Lewis C. Russell,* for plaintiff in error.

*W. O. Dean, solicitor-general, J. B. Gamble, O. A. Nix,* contra.

BLOODWORTH, J.  Upon his first trial the plaintiff in error was convicted of murder.  He obtained a new trial because the judge failed to instruct the jury on the theory of manslaughter.  Upon his second trial the judge charged upon manslaughter, and a new trial is now asked and error is alleged because such a charge was given.  This is the only special ground of the motion for a new trial.  It is insisted that the evidence on the first trial showed

that the deceased assaulted the defendant with a pair of brass knucks, that it was not then shown that brass knucks were weapons likely to produce death, but that this was shown in the last trial, and that this differentiates the cases made at the two trials; the evidence in the former case, according to the contention of plaintiff in error, demanding a charge on voluntary manslaughter, and the evidence in the latter not authorizing such a charge. When this case went to the Supreme Court after the first trial that court held: "If the evidence be sufficient to raise a theory of voluntary manslaughter, a failure to instruct the jury as to the law applicable thereto requires a reversal of the judgment refusing a new trial. . . Where the evidence presented a theory that after an interchange of words the decedent struck the defendant with a weapon not shown to be deadly, partially knocking him down, and the accused immediately fired upon him with a pistol, inflicting a mortal wound, a charge on the law of manslaughter was applicable." *Tanner* v. *State,* 145 *Ga.* 71 (88 S. E. 554). The decision shows that the weapon referred to was a pair of brass knucks, not then shown to be deadly. As will be hereafter pointed out, the general principle stated in that decision is applicable to this case, even though there is evidence to show that brass knucks are deadly weapons, and that at the time the deceased was shot he was advancing on the defendant.

In the case of *Cain* v. *State,* 7 *Ga. App.* 24 (65 S. E. 1069), we find the following: "It is well settled, by repeated rulings of the Supreme Court and this court, that on a trial for murder, if there is anything deducible from the evidence or the defendant's statement that would tend to show manslaughter, voluntary or involuntary, it is the duty of the court to instruct the jury fully on the law of manslaughter. *Crawford* v. *State,* 12 *Ga.* 142 (6); *Jackson* v. *State,* 76 *Ga.* 473; *Wayne* v. *State,* 56 *Ga.* 113; *Bell* v. *State,* 130 *Ga.* 865 (61 S. E. 996); *Strickland* v. *State,* 133 *Ga.* 76 (65 S. E. 148); *Pyle* v. *State,* 4 *Ga. App.* 811 (62 S. E. 540). In the *Crawford* case, supra, the court strongly expresses itself on the subject, as follows: 'When a defendant is put upon trial for murder, and there is any doubt as to the grade of homicide of which he is guilty, it is the duty of the court clearly and distinctly to instruct the jury as to the law, defining the several grades of homicide as recognized by the Penal Code, and then leave it to

the jury to find from the evidence of what particular grade he is guilty.' In *Jackson* v. *State,* supra, the court uses still stronger language, and holds that 'where there is evidence sufficient to raise a doubt, however slight, upon the point whether the case is murder or manslaughter, voluntary or involuntary, the court should instruct the jury upon these grades of manslaughter as well as murder.' " In *Griffin* v. *State,* 18 *Ga. App.* 462 (89 S. E. 537), it is said: "If there be any evidence to create a doubt, however slight, as to whether the offense is murder or voluntary manslaughter, instructions as to the law of both of these offenses should be given. *Jackson* v. *State,* 76 *Ga.* 473, 478; *Wayne* v. *State,* 56 *Ga.* 113." And "If there is anything deducible from the evidence or from the defendant's statement at the trial, that would *tend to show* manslaughter, voluntary or involuntary, it is the duty of the court to instruct the jury fully on the law of manslaughter."

The evidence fails to show that any weapon was found on the person of the deceased, and fails to show that any knucks were seen around the place he fell after he was shot. There are several theories deducible from the evidence and the statement of the defendant that would tend to show manslaughter. One of these is that after an interchange of words and upon sudden provocation the accused and the deceased each drew a weapon, one a pistol the other a knife, and a battle ensued, no undue advantage being sought or taken by either. On this theory the defendant would be guilty of manslaughter. Taking all of the testimony in the case, there is ample evidence to support each branch of this theory. The statement of the defendant shows that a short time prior to the shot the deceased had a knife, and one of the witnesses for the defendant swore that he thought he saw "a knife under his [the deceased's] arm where he was lying on the ground; . . it looked to me more like a knife than anything else." There was some evidence of hot words, and also evidence to show that the wound on the face of the defendant, which he claimed to have been made by brass knucks, was not so made. See *Clements* v. *State,* 140 *Ga.* 165 (2), 167 (78 S. E. 716); *Strickland* v. *State,* supra; *Wall* v. *State,* 126 *Ga.* 549 (55 S. E. 484); *Gann* v. *State,* 30 *Ga.* 67; *Harris* v. *State,* 2 *Ga. App.* 487 (58 S. E. 680); *Clark* v. *State,* 6 *Ga. App.* 741 (65 S. E. 694). In the case last cited

Judge Russell said (p. 743): "If there is any theory of the evidence authorizing the inference that the killing was the result of a sudden heat of passion pending a fight or aroused by an assault, and without malice aforethought, it is not unlawful for the defendant to be convicted of voluntary manslaughter." Another theory justifying the charge of voluntary manslaughter is found in the evidence of witness B. B. Peppers, who swore: "Mr. Sells finally struck him with his fist. That sorter dazed him back a little. He went back behind a mule and buggy. . . I didn't see what Mr. Sells hit him with; so far as I know he just hit him with his fist. . . I could not say whether or not he hit him with anything besides his fist. I never saw anything. After Mr. Sells struck Mr. Tanner and knocked him back behind the buggy he continued to advance on him. Just as quick as Sells hit him he put his hand in his coat-pocket and made two or three steps towards him just as quick as he could, and the pistol fired. . . Sells advanced on Tanner after he put his hand in his side coat-pocket; it was right then that the pistol shot." The judge properly adjusted his charge to this branch of the case in part as follows: "If you believe from the evidence that the defendant [deceased?] at the time of the alleged killing only intended to commit an assault or an assault and battery upon defendant, or if you believe from the evidence, beyond a reasonable doubt, that deceased struck defendant only with his fist, or was attempting to do so, when he was shot, and if you believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed the deceased to prevent such an assault or an assault and battery, the killing, under these circumstances, would be manslaughter, and not murder. But if defendant [deceased?] intended to commit a felony upon the person of deceased [defendant?], or if the deceased made an assault upon the defendant with brass knucks, and the evidence shows the same to be a weapon likely to produce death, and defendant shot and killed deceased to prevent deceased from assaulting defendant with said knucks, the killing, under these circumstances, would be justifiable homicide." From the above it will be seen that there was ample evidence to authorize the charge on voluntary manslaughter.

The evidence, in connection with the statement of defendant,

presented three theories as to the truth of the case. The charge of the judge was full and fair. The duty of determining which theory was correct devolved upon the jury; and this court finds in the record no reason for interfering with the verdict.

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*