## 8994. KEY *v.* THE STATE.

1. The charges complained of in grounds 8 and 9 of the amended motion for new trial are authorized by the evidence, and are not subject to the exceptions taken.
2. Although it is not obligatory upon the trial judge, in the absence of an appropriate written request, to outline the contentions of the defendant which are based solely on the defendant's statement, still, when the judge undertakes to state such contentions, he must state them correctly. It was harmful error for the court, in giving the defendant's contentions to the jury, to include a contention not supported either by his statement or his evidence.
3. The charge of the court in this case incorrectly stated the contentions of the defendant, and for that reason was erroneous.

DECIDED NOVEMBER 14, 1917.

Indictment for murder; conviction of manslaughter; from Jasper superior court—Judge Park. June 2, 1917.

Sam Key was indicted for the murder of Cohen Malone, and was convicted of voluntary manslaughter. As each ground of the amendment to the motion for a new trial complains of certain instructions of the court upon the ground that they were unauthorized under the evidence, a recital of the testimony adduced upon the trial is necessary to a clear understanding of the errors complained of.

The evidence shows, that the residence of the defendant was within sight of the home of Walter Roberts and Addie Roberts, his wife; that the home of defendant consisted of a two-room house, back of which was a third room used as a kitchen. On December 9, about one-thirty or two o'clock p. m., Walter Roberts heard what he took to be a number of pistol shots, between the houses at Sam Key's residence. Upon looking out of his window he saw Cohen Malone run out from between the houses, turn around and look back, stagger and fall. He saw Sam Key, the defendant, run up to Malone and, while standing right over him, shoot him with a shotgun. Witness could not see anything in the defendant's hand, but saw him walk up and shoot Cohen Ma-

lone when he was down. The testimony of Addie Roberts was materially the same as that of her husband. She testified further, that Key, the defendant, had come by their residence a short time before the killing, and sat down with them in front; that shortly afterward Cohen Malone came by in his buggy, and the defendant arose and walked along behind the buggy, and shortly before the killing the witness saw the defendant and the deceased in the buggy together, going towards the defendant's home; that the buggy with these two occupants passed on the other side of defendant's house and stopped, leaving all the buggy obscured. from witness's sight except the rear wheel; that shortly afterward witness heard the shots fired and saw deceased run out from behind between the houses, stagger and fall, and saw defendant shoot him while down on the ground. Cade Malone, father of deceased, testified that at the time of the homicide he found his son's pistol at home, lying on the bed with all the cartridges except one in it, and that his son's gun was at defendant's home at the time, the defendant having borrowed it several days before, for hunting. Chafin, a witness for the State, had found a fresh shell, which had been cut around and shot, between where the body lay and the house, apparently shot from the house towards the body. The State, after introducing the foregoing testimony, closed.

A witness for the defendant testified that Malone, the deceased, had come by her home the morning of his death, told her he was in some trouble with a fellow, and asked for her husband. Another of his witnesses testified that she had seen Cohen on the day before his death, when he tried to borrow a shotgun from her, telling her that "he had got into it;" but witness refused to lend him the gun. A member of the coroner's jury which investigated the killing testified that he had seen two or three bullet holes by the side of defendant's door, supposedly fired from the yard, and found a bullet hole in the ground between the house and the place where deceased fell, supposedly fired from the house, and that a cut shell had been exhibited to the coroner's jury. This witness found one bullet hole in the neck and shoulder of deceased, and a hole about an inch around on his stomach. Another of defendant's witnesses testified, that she had been at Cade Malone's house a little time before the homicide, when Key, the defendant, came along; that Cohen told Key that he was going after some liquor that evening,

and Key told him to come over· to his house and he would go with him; and that deceased went to the lot, got his mule, hitched it up, and went towards the defendant's house. In a few minutes the shots were heard. This witness further testified that the· hole in the side of deceased was about the size of a dollar.

The defendant made the following statement: "Gentlemen of the jury, the day before me and Cohen had this trouble I started to the field and got in the woods, and I caught this boy on my wife, and when they saw me they jumped up and run, and I hollered at my wife. And ·I went on to my field and went to work. And when I come back to the house that night my wife was gone, and not expecting it I went to pieces. And I come on up the road and Cohen was standing up there in Cade's yard, and he said, 'Come on and go to Mansfield with me after some liquor,' and I told him 'All right.' And he come up there in his buggy, and he said, 'Have you got a gun?' And I told him 'No,' and he said 'Let's go back to the house and get one.' And he wanted a match, and I went and got him a match. And I came out, and he said, 'Sam, what in the hell was you hollering at me for?' And I said, 'I wasn't holler- ·ing at you; I was hollering at my wife.' He said, 'God damn you and your wife, I have got her and I expect to keep her.' And I said, 'You are a God damn liar,' and he jerked a pistol out and commenced shooting, and I shot. I run out with my gun; I. shot him with a shotgun and he fell; and I went down to Pa's."

*Greene F. Johnson,* for plaintiff in error.

*A. S. Thurman, solicitor-general pro tem.,* contra.

· HARWELL, J. (After stating the facts.) 1. We think the evi- dence authorized the charges complained of in grounds 8 and 9 of the motion for new trial. The charge set out in ground 8 was, that, should the jury believe the defendant lured Cohen Malone to his house for the purpose of killing him, and brought about cir- cumstances where it was necessary for Malone to protect his own person, the defendant would not be authorized to take· advantage of any illegal circumstances he brought about himself. The charge set out in ground 9 was on the law of mutual combat.

2. The following excerpts from the charge of the court are com- plained of, for the reason that they misstated the contentions of the defendant; and put him in the attitude of asserting before the court and .jury two inconsistent defenses, thereby preju-

dicing his case in the minds of the jury. In the 4th ground the following charge is complained of: "He contends, in the second place, he was justifiable, because, at the time he shot the person alleged to have been shot, Cohen Malone was endeavoring to have sexual intercourse with his wife; and he contends upon that ground also he had a right to shoot him, and under the law and facts of this case he was not guilty of any offense whatever." In the 5th ground this charge is excepted to: "As I stated to you just now, the defendant sets up two defenses in this case. Under the law he has the right to set up those two defenses; and if he is justifiable under both of them or justifiable under either of them, you would not be authorized to convict the defendant in this case. He contends in the second place that he shot the person alleged to have been shot, to prevent Cohen Malone from committing an act of adultery with his wife; and contends that was one of the reasons he shot him, and contends he had a right to shoot, and contends that at the time he shot him he was justifiable." In the 6th ground: "I charge you as a correct principle of law, under the laws of the State of Georgia, a husband has the right to take the life of another person to prevent an act of adultery with his wife, under the following circumstances: He has a right to shoot the adulterer of his wife just before the act is committed, or during its operation, or immediately afterward; that is, if the act of adultery is about to take place with his wife, or if the act of adultery has been committed; if a husband kills another under those circumstances, then the law says he would be justifiable, and you would not be authorized to convict him of any offense. But whether or not it was in operation, or whether or not it was immediately afterward, are all questions of fact for consideration and determination by the jury." The charge complained of in the 7th ground is as follows: "I charge you further, if there was an act of adultery pending at that time, that is, if the defendant in this case, acting as a reasonable man, honestly believed it was necessary for him to take the life of the person alleged to have been killed in that bill of indictment, and if he killed him acting as a reasonable man to prevent the repetition of a further act of adultery, in the event there had been an act of adultery with his wife, and he killed him under circumstances of that kind, he would be justifiable, and you would not be authorized to convict

him of any offense." The court appends a note to these grounds of the motion, stating that "able counsel for movant, in his argument to the jury, forcibly presented the principles of law complained of in said grounds. The court remembers that he quoted the following, to wit: 'The man that committeth adultery with another man's wife, even he that committeth adultery with his neighbor's wife, the adulterer and adulteress shall surely be put to death.' The court is satisfied, from his exalted opinion of movant's counsel, that he would not, in the argument of any case, enter the field of absurdity. The court was fully justified in giving said instructions from the facts, but, in addition thereto, had the solemn opinion in judicio of one of Georgia's best lawyers, as a compass to be guided by in reaching the proper legal port."

It is not, without a request to do so, obligatory on the judge presiding in the trial of a criminal case to give in charge to the jury the law applicable to a theory of the defense raised alone by the statement of the accused. Yet, when a given charge is directed to a theory raised by the defendant's statement, it should fully cover the theory so raised. If the trial judge undertakes to state the contentions of the defendant, as embodied in his statement, he must state them correctly. *Hardin* v. *State,* 107 *Ga.* 718 (33 S. E. 700); *Ragland* v. *State,* 111 *Ga.* 211 (36 S. E. 682); *Gay* v. *State,* 111 *Ga.* 648 (36 S. E. 857); *Garland* v. *State,* 124 *Ga.* 832 (2) (53 S. E. 314); *Richards* v. *State,* 114 *Ga.* 834 (40 S. E. 1001). The same principle is applied by the courts in civil actions. *Southern Ry. Co.* v. *Thompson,* 129 *Ga.* 367 (58 S. E. 1044); *Hightower* v. *Ansley,* 126 *Ga.* 8 (6), 13 (54 S. E. 939, 7 Ann. Cas. 927). The defendant's references, in his statement, to seeing his wife and the deceased in the woods in a compromising position on the day before the killing, and to her not being at the house that night when he returned, and to the reply of the deceased, "God damn you and your wife, I have got her and I expect to keep her," are not given by defendant as the reason why he shot the deceased. He does not put his defense upon the right to shoot to prevent an impending act of adultery with his wife. Defendant's reply to the above-quoted statement of deceased,—"I have got her [defendant's wife] and I expect to keep her,"—was to call deceased a liar. Defendant says that then "he jerked a pistol out and commenced shooting, and I shot,"

thus putting his right to shoot upon the ground of self-defense. The apparent friendly feeling existing in the mind of the defendant toward the deceased on the morning preceding the killing, according to the evidence, and according to defendant's own statement, and the further fact that there was no evidence to indicate that the wife was present at the home of defendant when the shooting took place, negative the theory that he shot to prevent an impending criminal intercourse between his wife and deceased. At any rate he made no such contention in his statement, or in any evidence offered by him.

Was the charge of the court, under these circumstances, harmful to the accused? It is the contention of the State that the charge gave the defendant the benefit of a defense to which he really was not entitled, and that therefore it could not be harmful to him, but that it was really helpful. We can not take that view of it. Jurors, as a rule, respect and give full weight to the words which fall from the lips of the trial judge in his charge, and rightly so. The testimony of the witnesses and the statement of the defendant may, and sometimes do, fall upon inattentive ears. How often have we seen tired jurors who have given but slight attention to the arguments of counsel listen intently to catch every word uttered by the trial judge in his charge. Can it be said, then, when a respected trial judge sums up the case and gives to the jury, just before they retire to consider their verdict, some theory of the case, as a contention of the defendant, which he does not ask for, and which on the face of it the jurors at once recognize is utterly without foundation in fact, that such instruction is harmless to the accused? Does it not weaken his real defense in the minds of the jury, if he has one? We are so constituted that our confidence in the rightfulness of a cause really meritorious may be shaken because of some contention which is plainly false or absurd.

The argument of counsel, as stated in the note appended by the court to the grounds of the motion, did not authorize the charge complained of. It is true that a party can not obtain a reversal for an error which he has invited, as by a request to charge or by a formal admission that a given principle is not involved in the case. *Partee* v. *State,* 19 *Ga. App.* 752 (92 S. E. 306); *Quattlebaum* v. *State,* 119 *Ga.* 433 (46 S. E. 677); *Griffin* v. *State,* 113

*Ga.* 281 (38 S. E. 844). But arguments of counsel to the jury will not justify a charge not authorized by the evidence or by the defendant's statement. *Horton* v. *State,* 120 *Ga.* 307 (47 S. E. 969) ; *Tanner* v. *State,* 145 *Ga.* 71 (88 S. E. 554). Furthermore, the argument of counsel in the instant case, so far as the record shows, did not go to the length of claiming that the defendant had a right to kill the deceased because *at that time*—that is, at the time of the killing—the deceased was endeavoring to have sexual intercourse with defendant's wife. The court instructed the jury that the defendant "contends he was justifiable because *at the time he shot, the person alleged to have been shot,* Cohen Malone, was endeavoring to have sexual intercourse with his wife, and he contends upon that ground also he had a right to shoot him," etc. We hold, therefore, that the charge of the court incorrectly stated the contentions of the defendant, and was such harmful error as requires the grant of a new trial. The court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*