## 9601. COOK *v.* THE STATE.

1. Without an appropriate and timely request in writing, it was not error requiring a new trial for the court to fail, in its charge, to define the word "felony," or the phrase "serious personal injury." *Pickens* v. *State,* 132 *Ga.* 46, 47 (63 S. E. 783); *Jordan* v. *State,* 16 *Ga. App.* 393, 400 (85 S. E. 455), and cases cited.

2. When the evidence for the defendant demands a charge on self-defense, and the statement of the accused is so uncertain and indefinite as to leave in doubt whether he claimed he shot in self-defense, or that the killing was the result of accident or misfortune, he will not be heard to complain that the court gave to the jury a charge based upon his own uncertain and indefinite statement and giving·him the benefit of both theories of defense.

DECIDED MAY 1, 1918. REHEARING DENIED JULY 10, 1918.

Conviction of manslaughter; from Jasper superior court—Judge Park. February 22, 1918.

*A. S. Thurman, A. Y. Clement,* for plaintiff in error.

*Doyle Campbell, solicitor-general,* contra.

BLOODWORTH, J. Only the second headnote needs elaboration. Grounds 5, 6, 7, and 8 of the motion for a new trial alleged that the trial judge erred in charging: (5) "Now the defendant in this case contends in the first place that the killing was accidental." (6) "Now the defendant in this case contends in the first place that the killing was accidental. He contends in the second place

that if the killing was not accidental, but if it was an intentional killing, that he would not be guilty of any offense whatever. That is, he contends that it was an accidental killing, and that he could not be held responsible under the laws of the State of Georgia. And he contends in the second place, if it was not an accidental killing, but was an intentional killing, he contends, he was acting in self-defense." (7) "I charge you that the defendant has the right under the law to set up those defenses; and it is left entirely with jury as to whether or not either one of those defenses are correct under the law and the evidence in this case." (8) "The law says that no person shall be found guilty of any crime or misdemeanor committed by accident or misfortune, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect. That is, under the laws of the State of Georgia, if one person kills another through accident or misfortune, and there was no evil design, or intention, or culpable neglect, under circumstances of that kind the killing would be attributable to accidental cause, and the person would not be guilty of any offense whatever." These grounds are alleged to be error as being an erroneous statement of the contention of defendant, and "for the reasons that there was no evidence adduced in the trial authorizing the same, nor anything in the defendant's statement authorizing such charge, —and such charge put the defendant in the attitude of contending that the killing was accidental, when in fact an accidental killing is not hinted at in the evidence nor in the defendant's statement, and such charge was erroneous, harmful and prejudicial to the defendant, in that he was put in the attitude of asserting two inconsistent and irreconcilable defenses,—two defenses which the jury were bound to know could not simultaneously exist in any case,—and which charge strongly tended to discredit the real defense relied upon by defendant in this case."

The evidence for the defendant authorized a charge on self-defense, and no complaint is made as to this branch of the charge. The evidence contained nothing that would authorize a charge on "accidental killing." We must therefore look to the statement to see if there is anything therein that would authorize the charge on this theory, of which complaint is made. The defendant stated that he had been rabbit hunting, and that the man who had formerly lived in the house where the shooting occurred, and where

the "frolic" was in progress, asked the accused to help him catch his chickens. He further stated: "I went on over there and carried the gun over there, and he was there catching his chickens, and I set my gun over in the yard to keep from running over it. And after we got the chickens caught he put three coops in the wagon, and I said, 'I will help you hold them on,' and he said, 'All right'; and I went on and didn't come right straight on back. I knew the party was going to be up there at that house, and when I got back over there the crowd was gathered up, and had the table and everything, and I went in there and staid in there a little while. And when I got back to the house Jesse was coming from the stove-room with this axe in his hand, and he came on across the house, and I said, 'Jesse, I wouldn't start any fuss, you put the axe down. Let's have a good time'; and he stepped back and throwed his leg behind me, and throwed me over in the floor, and drawed the axe back, and Joe grabbed it, and I crawled out until I got in the other door, and I jumped up and went on out the house, and directly then 7 or 8 shots took place, and the people came out of the house, looked like they were fixing to go off, and I laid down in the cotton patch until the shooting was over, and somebody said, 'Come on back, let's go to frolicking.' And when I went in the house I don't know whether he went out of the door, or which way he come from. Just as I looked back he had the bottle drawed back, and I stepped behind another fellow to keep him from throwing the bottle at me, and he drawed back again, and somebody grabbed the bottle, and he made at me, and I run out on this side of that other fellow, and I had the gun in my hand, and he the bottle, sorter this way [indicating that it was drawn back]; and I turned to go out of the door, and I never got in the big room before the gun fired. I had got even with the stove-room door, and he came from the door in the corner at me." It will be seen from this that the accused does not make clear his defense. The statement is hardly more a claim of self-defense than of killing by accident or misfortune. While the accused says that the deceased "came from the door in the corner at me," and indicated that the bottle was "drawn back," yet he does not say that he fired to prevent the deceased from striking him. He does not even say that he shot the gun, but says only that the "gun fired." This statement left the matter uncertain,

and the trial judge gave the accused the benefit of the doubt and charged on both theories,—that of accidental shooting, and that of shooting in self-defense. This was to the advantage of the defendant, and he will not be heard to complain of a charge based on his own uncertain and indefinite statement, and which gave him the advantage of two theories of defense. If these two defenses are, as suggested by counsel, "inconsistent and irreconcilable," the accused alone is responsible therefor by reason of the statement made by him.

This case is clearly distinguishable from the case of *Key* v. *State,* 21 *Ga. App.* 300 (94 S. E. 283), cited in the brief of counsel for the plaintiff in error. In that case the court charged a theory of defense not authorized either by the evidence or the statement, and this court held that "It was harmful error for the court, in giving the defendant's contentions to the jury, to include a contention not supported either by his statement or his evidence." In the instant case the statement left the matter in such doubt that we think the trial judge properly gave in charge the two theories of defense.

There is evidence to support the verdict of manslaughter.

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*