## QUATTLEBAUM v. THE STATE.

| 119 | 433 |
|-----|-----|
| 120 | 169 |
| 120 | 310 |
| 120 | 311 |
| 120 | 312 |
| 119 | 433 |
| 121 | 146 |
| 119 | 433 |
| 122 | 573 |
| 123 | 501 |
| 123 | 569 |

1. In a prosecution for murder, where the defendant, an epileptic, relied on the defense of insanity at the time of the homicide, he had no cause to complain of a charge that before the jury could convict they must find not only that the defendant knew the difference between right and wrong, and was mentally capable of choosing to do or not to do the alleged act, but they must also find that he was capable of governing his conduct in accordance with such a choice.

2. A party can not obtain a reversal for an error which he has himself invited.

3. The defendant was found guilty of voluntary manslaughter; and even if, as contended by him, the evidence made out a case of murder or justifiable homicide, he can not complain because the judge, in compliance with his oral and written requests, charged on the subject of voluntary manslaughter.

4. Under the ruling in *Johnson* v. *R. & D. R. Co.*, 95 *Ga.* 685, books of science and art are not admissible to prove the opinions of experts announced therein; nor can they, without being introduced, be read to the jury in the argument, over the objection of the opposite party.

5. While counsel may quote from memory, or even read brief extracts of literary or historical matter to illustrate and make effective a discussion of the facts, nothing which performs the office of evidence, or introduces facts calculated to influence the jury, can first be used in argument.

6. One adjudged insane is responsible for a crime committed during a lucid interval. Penal Code, § 35.

7. The defendant, an epileptic, was committed to the asylum, there to remain until restored to sound mind and right reason. More than a year thereafter

he was openly at large, but there was no evidence as to the reason for his release. The judge charged that the jury must find that he was of sound mind at the time of the homicide, before he could be found guilty of any offense. In the absence of a special request so to do, the judge was not bound to charge on any presumption as to the continuance of insanity arising from the judgment on the proceeding de lunatico inquirendo. *Lucas* v. *Parsons*, 23 *Ga.* 279.

8. One who had served as a juror on such inquiry did not impeach such verdict by testifying, on a subsequent trial of the defendant for murder, as to his knowledge of the defendant's mental condition before and after such verdict, and as to the particular character of insanity with which the defendant had been afflicted. Civil Code, § 3743.

9. Even if the grounds of the motion for a continuance be treated as complete, and evidence in other parts of the record could be considered, no error appears. The judge exercised a humane and legal discretion : there was no plea of present insanity ; the defendant's misfortune would not relieve him of liability to be tried ; it did not appear that he would be better able to go to trial at a subsequent term, and there was evidence that he might be actually worse as the result of being confined in jail for an offense not bailable as matter of right. Civil Code, § 5138.

Argued January 18, — Decided February 12, 1904.

Conviction of manslaughter. Before Judge Littlejohn. Dooly superior court. December 10, 1903.

*Shipp & Sheppard, Crum & Jones,* and *J. T. Jeter,* for plaintiff in error. *F. A. Hooper, solicitor-general,* contra.

LAMAR, J. 1. In this distressing case it appears that the defendant had, from his earliest infancy, been afflicted with epilepsy. He has, however, no cause to complain of the charge on the subject of insanity; for the court fully and fairly submitted to the jury the question whether the homicide was committed during a lucid interval, instructing them that before they could convict they must find not only that the defendant knew the difference between right and wrong, and was mentally capable of choosing to do or not to do the alleged act, but that they must also find that he was capable of governing his conduct in accordance with such choice.

2, 3. It appeared that the defendant with others had been playing ball, and, while returning home, had an altercation in which the deceased — who had a bat in his hand — used language which greatly incensed the defendant, and according to the testimony for the State the latter thereupon drew his pistol, fired, and instantly killed his companion. At the time the accused used language

indicating a settled purpose to kill, and shortly after the shooting fled to his home, where he was later arrested. The defendant insists that under the evidence he was guilty either of murder or of justifiable homicide, and that it was error for the court to charge the law of voluntary manslaughter. Even if the evidence had not warranted a charge on the subject of voluntary manslaughter, the defendant can take no advantage thereof, inasmuch as it appears that the court was requested by his counsel, both orally and in writing, to charge the law on that subject. It is well settled that a party can not obtain a reversal for errors which he has himself committed, nor for an error which he has invited. Compare *Howard* v. *State*, 115 *Ga.* 244 (4), and cit.

4, 5. The almanac or the Northampton tables of mortality (*Ga. R. Co.* v. *Oaks*, 52 *Ga.* 410 (4)) and other similar works of exact science may be introduced as evidence. For the reasons given in *Johnson* v. *Railroad Co.*, 95 *Ga.* 685, books of science and art are not admissible in evidence to prove the opinions of experts announced therein. It was not error, therefore, to refuse to permit counsel for the accused to read, from a book of medical jurisprudence, an account of a homicide committed by an epileptic, with the opinion of the author as to whether or not he was criminally responsible. Such book could not have been received in evidence when it might have been met by counter-extracts; and if not admissible in evidence, it was doubly inadmissible to read it first in argument, when there might be no opportunity to reply in kind. Of course this ruling does not lead to the conclusion that counsel may not quote from memory, or even read brief extracts of literary or historical matter to embellish or strengthen the argument, or to illustrate and make effective his discussion of the facts. And while there is some conflict of authorities on the subject (Lawson's Expert and Opin. Ev. (2d ed.) 217), the ruling in the *Johnson* case, and in *Cribb* v. *State*, 118 *Ga.* 316, determines that in this State nothing can be first read in argument, which performs the office of evidence, or introduces facts calculated to influence the jury.

6–9. The other assignments of error are sufficiently dealt with in the headnotes.

*Judgment affirmed.*    *All the Justices concur, except Simmons, C. J., absent.*