## JONES *v.* THE STATE.

1. Under the evidence and the defendant's statement, voluntary manslaughter was not involved in the case; and the excerpts from the charge of the court, of which complaint is made, are not erroneous on the ground that they eliminated the question of voluntary manslaughter. And the court did not err in refusing certain written requests to charge, which involved the question of voluntary manslaughter. While some of the requests state correct principles of law, they are not applicable to the case.

2. On the trial of a case, anything which is not authorized by the facts, or which tends to destroy the impartiality of jurors, or to excite their passions or prejudices, should not be argued by counsel, and should be discountenanced by the court. Consequently where, on the trial of one charged with murder, counsel for the defendant in the concluding argument stated to the jury that it is a matter of history that the States and countries which have abolished capital punishment appear to have a lower percentage of homicides than in States and countries that have capital punishment, etc., it was not error for the court to sustain an objection that the argument was improper, and to instruct the jury not to consider it, there being no evidence to authorize such argument.

3. The evidence authorized the verdict, and the court did not err in overruling the motion for new trial.

No. 6371. APRIL 14, 1928.

Murder. Before Judge Mathews. Bibb superior court. November 26, 1927.

*R. D. Feagin* and *H. B. Bell,* for plaintiff in error.

*George M. Napier, attorney-general, Charles H. Garrett, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

HILL, J. W. P. Short was found in a dying condition shortly after 7 o'clock a. m. on October 7, 1927, in the back part of his pressing-club on Cherry Street in Macon. His skull had been fractured by one blow on the right side of the head, just above the right ear, with some blunt instrument. A piece of water-pipe about four feet long was lying near where his body was found. He died

shortly afterwards from the injury, without recovering conscious-ness. There was no eye-witness to the homicide. No arrest was made for several days. The defendant, Robert Jones, was suspected, and officers began looking for him because he had formerly worked in the pressing-club and had had some "argument" with the deceased over a suit of clothes of his which he claimed had been lost by Short's pressing-club and for which Short had given him another suit, and, according to the defendant's statement, had promised to pay him $1.50 "boot," but which difference had not been paid. The defendant was arrested and put in jail, and was indicted for the murder of the deceased. Shortly after being confined in jail the defendant made a statement to the sheriff in writing, which was taken down by the court reporter, in which he admitted the homicide, and stated certain facts which, if true, tended to mitigate the crime, and which his counsel contended would have authorized a verdict of voluntary manslaughter. In his statement the defendant claimed in substance that he went unarmed into the shop the morning of the homicide, for the purpose of asking Short for the $1.50 due him; that an argument ensued during which Short threatened him and started towards his desk, and that the defendant, believing Short was going for a gun, and alarmed for his own safety, and in the desire to escape, grabbed the iron pipe with which the back door had been fastened and against which the defendant insisted he was leaning as he talked to the deceased, and with one hand struck the deceased one blow with the pipe. The defendant then went to the front door, looked out, went back to where the deceased was, called and shook him and felt his pocket-book, and (as he says), "prompted by the devil," he thought that since the deed had been done he might as well get the money that was due him, and took the pocket-book of the deceased containing about $14. The deceased was a white man about seventy-two years old. The defendant was a negro twenty-one years old. He was put on trial on October 24, 1927, seventeen days after the homicide. The court appointed counsel to represent him. In his statement he explained how he had spent the money, and asked the court and jury to have mercy upon him. The jury returned a verdict of guilty, without recommendation, and the defendant was sentenced to be electrocuted. A motion for new trial was overruled, and he excepted.

The only ground of the motion for new trial which needs to be elaborated is the fourteenth, in which complaint is made that during the argument of R. D. Feagin, defendant's counsel, who was making the concluding argument to the jury, and while he was arguing and appealing to their discretion that if they should find the defendant guilty they should do so with a recommendation to mercy, and not impose the death penalty; and that mercy would fully vindicate the law even if the defendant was guilty, counsel stated to the jury that "it is a matter of history that the States and the countries that have tried a step in the direction of greater kindliness and mercy, and have abolished capital punishment, appear to have lower homicide rates than the States and countries that still held to it. The State in the American union (Maine) that has not had an execution for half a century has the lowest homicide record in the union." Counsel also undertook to read, as a part of his argument, an article by Prof. J. R. Moseley, in which the above statement was contained. The solicitor-general objected to both the argument of counsel as to any comparison of the homicide rates of States and countries which did not impose the death penalty with those which did, and also to the reading by counsel as a part of his argument of the article by Prof. Moseley containing the same statement; and the court sustained the objection and ruled that the argument was improper, and stopped counsel from continuing the argument, and instructed the jury not to consider the argument of counsel as to the comparison of the homicide rates of those States and countries which did not impose the death penalty for murder with those that did impose the death penalty, and refused to allow counsel to read before the jury that part of the article of Prof. Moseley set out in the quotation above, and instructed the jury not to consider the argument on that subject. Counsel in making said argument had stated to the jury that he was making no attack on the Georgia law of capital punishment, that he recognized it as the law and the right of the jury to impose the death penalty in the case if they found the defendant guilty, but it was in the jury's discretion not to impose the death penalty, but to extend mercy, and was appealing to that discretion of the jury, and as a reason for the appeal was making, or undertaking to make, the argument in question as one reason why the jury might see fit to exercise its discretion and recommend to

mercy in the event they found the defendant guilty of murder. It is insisted that the latitude of counsel in argument is very broad; that counsel had the legal right to make the argument that was objected to; that counsel had the right, as part of that argument, to read the quoted article by Prof. Moseley; that it was a legitimate appeal to the jury's discretion; that it might have influenced the jury to exercise their discretion and extend mercy, if the court had permitted the argument to be made and had not stopped counsel and instructed the jury to disregard the argument; that the ruling of the court was prejudicial to the defendant. It is further insisted that it was violative of art. 1, sec. 1, par. 5, of the constitution of Georgia (Civil Code, § 6361), providing that every person charged with an offense against the laws of Georgia shall have the privilege and benefit of counsel; that one of the privileges and benefits of counsel is the right of counsel to a very broad latitude in the discussion and argument of the issues pertinent to the case; that within the broad sphere of the argument is the right of counsel to cite facts of history, to read books of reference, history, poetry, or anything else that may legitimately illustrate from a logical standpoint the issue under discussion.

We are of the opinion that the trial court did not err in the ruling to which exception is taken. Undoubtedly counsel representing one on trial for murder should have the fullest latitude consistent with the facts of the case; but that rule does not justify or authorize counsel to travel outside of the record and make an attack upon the declared policy of the State as determined by the legislature of the State in favor of capital punishment. Whether capital punishment is right or wrong, and whether it should be abolished, is a question of policy which can be determined by the legislature alone; and thus to permit counsel to attack that policy, and to show that it is wrong by comparing it to the laws of other States which do not have capital punishment, is beyond the legitimate exercise of the right of counsel to represent their clients. That plea can be properly made to the legislative department of the State, but not to a court and jury which is operating under a law which has been declared by the legislative department of the State. The ruling of the court, therefore, was not violative of art. 1, sec. 1, par. 5, of the constitution of Georgia, providing that every person charged with an offense against the laws of Georgia

shall have the privilege and benefit of counsel. Even if an argument along the line of that which was being made by the counsel for the plaintiff in error would be proper in any case, under the present status of our constitution and laws there is no evidence in the record to show that certain States of this union have a different law from ours on the subject of the punishment for capital felonies, or that what is termed as history as to that question is in fact history; and certainly an article written by some writer in a newspaper could not be regarded as history or as a basis for the argument proposed in this case, in order that a verdict of guilty might be modified so as to authorize the jury in their discretion to reduce the extreme penalty for murder to one of imprisonment for life. Under our law the jury can now, in their discretion, recommend the defendant to the mercy of the court, in which event the court has no discretion to do other than to sentence the defendant to life imprisonment, if he be convicted of murder. No proposition is better established in our practice than that counsel can not introduce new facts in argument not brought out in the evidence, and to have permitted counsel to pursue the line of argument contended for by him would certainly have been to put in evidence the facts which he was seeking to get before the jury in his argument. The exact question here involved seems not to have been decided by this court; the nearest approach to it is the case of *Quattlebaum* v. *State,* 119 *Ga.* 433 (4, 5) (46 S. E. 677), where this court held: "Under the ruling in *Johnson* v. *R. & D. R. Co.,* 95 *Ga.* 685 [22 S. E. 694], books of science and art are not admissible to prove the opinions of experts announced therein; nor can they, without being introduced, be read to the jury in the argument, over the objection of the opposite party. . . While counsel may quote from memory, or even read brief extracts of literature, or historical matter to illustrate and make effective a discussion of the facts, nothing which performs the office of evidence, or introduces facts calculated to influence the jury, can first be used in argument." In *Styles* v. *State,* 129 *Ga.* 425, 429 (59 S. E. 249, 12 Ann. Cas. 176), jurors had read an editorial from a paper wherein it was said: "In Canada the law against murder is enforced vigorously and swiftly. The consequence is, the number of homicides is small in comparison with the number in this country. What is needed is a stirring of the conscience of the

people. They must have impressed upon them the sacredness of human life. When they have a proper regard for it, jurors will not be swerved by sentiment or seek excuses to avoid· their duty." In´the decision in that case it was said: "Anything not legitimately arising out of the trial of the case, which tends to destroy the im-- partiality of the juror, should be discountenanced. Whether beneficial to the State or to the accused, such things, upon the ground of irrelevancy, should be suppressed and not given the opportunity of influencing the minds or exciting the passions of the jurors. Verdicts should be the result of calm deliberation, founded upon the law and evidence. The accomplishment of that object can never be assured where irrelevant things which tend to destroy the impartiality of the jurors are allowed to creep into the trial."

None of the grounds of the motion for new trial show cause for reversal and the court did not err in overruling the motion for new trial.     *Judgment affirmed. All the Justices concur.*

RUSSELL, C. J., and HINES, J., concur in the result.