## · RAGLAND *v.* THE STATE.

111   211
f112   45
f112   80

111   211
114   18
114   57
114   89
114   835

111   211
e123   526

1. It is not, without a request to do so, obligatory on the judge presiding in the trial of a criminal case to give in charge to the jury the law applicable to a theory of the defense raised alone by the statement of the accused. Yet, when a given charge *is* directed to a theory raised by the defendant's statement, it should fully and distinctly cover the theory so raised.
2. Whether an advance by one man armed with a stick on another in the nighttime, and declining to stop when called on to do so, constitute circumstances equivalent to an assault so as to authorize a homicide to be reduced to voluntary manslaughter, is a question for the jury.
3. One may lawfully kill another who is attempting by violence or surprise to commit a felony on his person, and this is true whatever may be the grade of the attempted felony.   It is therefore error, after correctly charging that a bare fear of the offense is not sufficient to justify the killing, but that it must appear that the circumstances were sufficient to excite the fears of a reasonable man that a felony was about to be committed on his person, and that the party killing really acted under the influence of these fears and not in a spirit of revenge, for the judge to add :   " So, to a person killing in his defense it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary," etc.   The language quoted is the law of justifiable homicide in cases of mutual combat only, and has no connection whatever with the law of homicide to prevent the commission of a felony on the person of the slayer

Submitted June 18, — Decided July 11, 1900.

Indictment for murder.    Before Judge Candler.    Clayton superior court.    March term, 1900.

*J. B. Hutcheson* and *J. D. Humphries,* for plaintiff in error.

*J. M. Terrell,* attorney-general, and *W. T. Kimsey,* solicitor-general, contra.

LITTLE, J.    Ragland was indicted for the murder of Blessett by shooting him with a pistol, which it is alleged was committed in the county of Clayton on February 1, 1900.    The accused was convicted, and sentenced to be hanged.    He made a motion for a new trial on a number of grounds, which was overruled, and he excepted.    Such portions of the evidence as are

necessary to be referred to are stated in the opinion.   The first. three grounds are those usually found in motions for new trial under the practice which has grown up in this State, that is, "that the verdict is contrary to evidence and without evidence to support it; that the verdict is decidedly and strongly against the weight of the evidence; that it is contrary to law and the principles of justice and equity."   When the first of these grounds appears in a motion, it seems that the insertion of the two latter are certainly unnecessary and could readily be omitted.   These stereotyped grounds appear, without any good reason, in almost every motion for a new trial we are called on to consider.   All others which seek to attack the verdict in a general way might well be omitted without endangering the case of the plaintiff in error in this regard, and it may not be amiss, in this connection, to observe that, especially in a criminal case, a ground of the motion that a verdict "is contrary to the principles of justice and equity" is altogether superfluous.   The justice which one charged with crime is entitled to invoke is the law of the land; he has no equity; his guilt or innocence must be determined by the evidence for and against him.

· So far as this record discloses, there was no eye-witness to the shooting which resulted in the death of Blessett, and, as to what transpired at the time of the shooting, the jury was left to determine from the statements made by the deceased after he was shot, and the statement and admissions of the accused. It appears from the testimony of the father of the deceased, that. the younger members of his household had been out to a party that night, and had returned home where he was; that about one o'clock the same night his deceased son came home and told him that he was shot; witness sent for a physician.   He had a conversation with his son before he went for the physician, and repeatedly during the week which he lived afterward. The statement made in these conversations was, that the accused shot deceased in the road at or near a certain oak tree, as he was coming out of a gate; that the accused called to him and said "Stop there," and in return he called, saying "Hello, John."   The deceased again said "Stop," and then shot him. The deceased further stated, in his conversation to this witness, that after he was shot he spoke to the accused and the accused

said to him, "God damn you, why didn't you speak?" The tree and gate referred to in the statement of the deceased, the witness testified, was about 60 or 70 yards from his, the witness's house, and about 50 yards from Fannie McIntosh's house, in Clayton county. The statement made on his trial by the accused was to the effect, that he was at a supper at a certain church; that the deceased and quite a number of other persons were there; that after the supper he went home with a girl named Fannie McIntosh; that after arriving at her house he pulled off his shoes and remained there some time; that he was induced to pull off his shoes by request of the McIntosh woman, she giving as a reason that deceased would speak about his presence at her house; that when he left he walked out of the house without his shoes, and, going down the steps on the west side of the house, he discovered a man in the corner of the chimney, about 15 feet from him; that he immediately called and asked who it was; that the person hailed did not speak but walked directly towards him, and deceased said that he again hailed and told the man walking towards him to stop and not come on him; that the man had a stick in his hand; that the accused walked back and called to him the third time, "If you don't stop I will shoot you"; that he was going backwards at this time, and became entangled in the overhanging limb of a tree, and, not knowing the purpose of the advance on him, he shot "through fright and fear." Fannie McIntosh testified, that the shooting did not occur where the accused said that it did; that she heard the report of a gun somewhere from 10 to 20 minutes after the accused left her house; it was out towards the gate. Other evidence was introduced on the part of the State, which, because of the rulings we make on the charges of the court excepted to, it is not necessary should be set out in detail. And as the plaintiff in error is to be tried again, we do not pass on the evidence.

1, 2. It is alleged that the court, after charging the law of manslaughter as found in the Penal Code, erred in giving the following charge: "In all cases where a homicide is proven, to reduce that homicide from murder to voluntary manslaughter there must be some actual assault upon the person killing; that is, there must be more than the mere walking towards the

person; there must·be some actual assault; that is, there must be some attack, some attempt to do a violent injury on the person of another; there must be some actual assault upon the person killing, or there must be an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied." It is evident that the trial judge, in giving these instructions to the jury, had reference to the statement of the accused, when he used the words that "there must be more than the mere walking towards the person." We recognize the rule that, unless properly requested, a charge on the law raised alone by the statement of the prisoner is not obligatory on the part of the trial judge in giving instructions to the jury. In very many cases this should be done, and the present is, in our opinion, one of those cases, because the verdict was, in a great measure, to be based on the statements made by the deceased after he was shot, and the account·that the accused gave of the facts of the homicide in his statement to the jury. Some of these statements of the deceased were at least of doubtful admissibility, either as dying declarations or as part of the res gestæ of the homicide, and at best the evidence as to the facts of the homicide consisted of statement against statement. While we have no disposition to criticise. the rule above stated, yet, when the judge of his own motion undertakes to charge the law arising on a state of facts as given by the accused in his statement, the charge so given must be correct law and applicable to the theory of the defense made by the accused in his statement. Under this view, it must be determined that the charge complained of was error, for the reasons, first, it is not a sound legal proposition; second, it is not a correct application of the law to the theory of the defense raised by the statement. Under our Penal Code, § 65, three different conditions are legally sufficient to authorize a jury to reduce a homicide from murder to voluntary manslaughter. If the deceased made an actual assault upon the accused, or if the deceased attempted to commit a serious personal injury on the accused, or when there are other *equivalent circumstances* to justify the excitement of passion, the grade of the homicide

may be reduced to voluntary manslaughter. It will be noted that the instruction given was that there must be more than the mere walking towards the person, to reduce the homicide from murder to voluntary manslaughter. It is not necessary that there be some actual assault, some attack, some attempt to do a violent injury on the person killing, in order to reduce the offense. If there are other equivalent circumstances to justify the passion, the offense may be reduced. What these equivalent circumstances are is to be adjudged by the jury, and we apprehend that weight and significance would or not be attached to the fact of such walking towards the accused, according to the circumstances surrounding the parties at the time. For instance, if the jury were to believe that a rapid advance by one man armed with a stick upon another indicated an intention to do the latter some serious bodily harm when he should have arrived at a point sufficiently near, they might well determine these circumstances to be the equivalent of an assault on the person being advanced upon. Certainly the jury would have been fully authorized, if they believed the statement of the accused, to find that the circumstances detailed were the equivalent of an assault, and indicated, on the part of the person advancing, an intention to commit a serious personal injury on the accused. The reference by the judge to the prisoner's statement, as set out in the motion, did not really present the defense outlined by him. The accused stated that in the darkness of the night he discovered a man within fifteen feet of him standing, and (inferentially) waiting for his approach; that the person so waiting there advanced upon him with a stick, and would not stop when warned to do so. Such a state of facts would raise in the mind of a very reasonable man a belief that an attack was to be made upon him; and when the person being advanced on shoots and kills the person advancing under these circumstances, a principle of law applies which is essentially distinct from that which is applicable where one shoots and kills another who is merely walking towards him. There may not be one word of truth in the statement. Whether there is or not we are not called on to say; but the point is, that when the trial judge instructed the jury that the mere walking by the deceased towards the accused was

not sufficient to reduce the homicide from murder to voluntary manslaughter, he only partially covered the theory of the defense raised by the statement, and, in our opinion, if the charge on the subject of voluntary manslaughter was intended to meet the theory of the defendant, as it evidently was, it should have gone further and given the accused the benefit of the law applicable to the theory as it was really raised by his statement.

3. Complaint is made that, after charging the jury that it is justifiable homicide to kill another in self-defense, or in defense of habitation, property, or person, against one who manifestly intends or endeavors by violence or surprise to commit a felony on either, and then charging the law in relation to the character of the fears of such felony sufficient to justify the killing, the court added, in this connection, the following: "So, to a person killing in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, and that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." This charge is error. It is justifiable homicide, under our law, for one to kill another who is manifestly intending or endeavoring by violence or surprise to commit a felony on his person; and this is true without regard to the grade of felony; and it is not a correct proposition of law, that when one kills another to prevent the commission of a felony on his person, the danger must be so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was necessary. On the contrary, it is only necessary to be shown that the circumstances were sufficient to excite the fears of a reasonable man that such felony was about to be committed upon him, in order to justify the homicide. Otherwise, a woman who killed a man to prevent the rape of her person, or one who slew a burglar to prevent the burglary of his home, would not be justifiable. In neither of these cases was the life of the slayer involved, but in each a felony was about to be committed. A person in this State may kill another for other purposes than to save his own life, and be justified, if he do so to prevent any felony from being

committed on his habitation, person, or property; his defense is complete when to a jury it appears that the circumstances were sufficient to excite the fears of a reasonable man that a felony was about to be committed, and that he killed to prevent its commission. The latter part of the charge as given applies only to cases of homicide where the parties had previously been engaged in mutual combat. *Powell* v. *State*, 101 *Ga.* 9; *Stubbs* v. *State*, 110 *Ga.* It is doubtless true that the presiding judge recognized these distinctions, but, inasmuch as the two principles enunciated in his charge are directly coupled together without a distinction having been drawn, the jury might have understood, from the charge as set out in the ground of the motion, that while it was justifiable for one to kill another to prevent the commission of a felony on his person, it must at the same time appear that the danger was so urgent and pressing at the time of the killing that it was necessary for the slayer to take the life of the deceased, in order to save his own life. This is not and has never been the law.

*Judgment reversed. All the Justices concurring.*