REEVES *v.* THE STATE.

1. When in the trial of a murder case there was a theory presented by the prisoner's statement which would have authorized the killing of the deceased whether he was at the time advancing upon the accused or not, it was error requiring the grant of a new trial for the court to so charge the jury as to leave the impression upon their minds that the killing was not justifiable under any circumstances unless the deceased was at the time of the killing advancing upon the accused.
2. The judgment refusing a new trial in this case is less reluctantly reversed, because it is clearly apparent from the record that the entire truth of the transaction under investigation has not been brought to light.

Argued October 21,—Decided November 7, 1901.

Indictment for murder. Before Judge Reagan. Dodge superior court. July 1, 1901.

According to the testimony introduced by the State, Bowen and Reeves were seen, by two witnesses about 150 yards away, walking together. Then they came to a stop, and Reeves seized Bowen's right arm with his left hand, and shot Bowen with a pistol, shooting twice. Bowen had his gun in his right hand at arm's length, and Reeves was walking on his left side. After the shooting, Reeves walked off immediately toward the railroad, and soon ran from the town where the killing occurred to a point about fifteen miles distant, in another county, where, a few days later, he surrendered himself to the sheriff of Dodge county. He and Bowen had not seemed to be unfriendly before the shooting. At the time Reeves seized Bowen, Bowen was not doing anything to him; "he just kind

of come to a stop." The witness could not say positively whether it was Bowen's arm or his gun that Reeves seized. After he shot him he picked up Bowen's gun and walked off. When one witness first saw the parties they were going in opposite directions. They met, and Reeves turned and walked with Bowen. Bowen died in two or three minutes after he was shot. Another witness testified that she was one or two hundred yards distant; her attention was attracted by the first shot, and she saw Reeves shoot the second time, when Bowen was down on his knees and had his hand up to his head. At this time Reeves was behind Bowen's back. Bowen had a pistol in his pocket.

A witness for the defendant testified that he was about 60 or 75 yards from the parties at the time of the shooting, and there was nothing to obstruct his view. He saw them walking slowly side by side, looking each other in the face. Suddenly Bowen ran back and threw his rifle in Reeves's face; whereupon Reeves seized the rifle and shot Bowen. Bowen was staggering as he walked. Another witness for the defendant testified that as she and another woman accompanied by Reeves were walking along the road, they were accosted by Bowen and told to stop. They stopped, and Bowen walked up to Reeves and said, with an oath, that he was going to make Reeves eat an ear of corn which Bowen had. He told Reeves that he supposed that he said he was going to make him eat some corn. Reeves asked him, who said so? and he told him that two women said so. It appears that Bowen had just come from a house where two women lived. As soon as Bowen made these statements, the two women who were with Reeves ran away, and the shooting occurred ten or fifteen minutes later. Several witnesses gave Bowen a character for violence in the community.

The prisoner's statement was: "I was going along with these women that afternoon, and Mr. Bowen was up there at Mrs. Coffee's house; and as soon as he seed us coming towards town, he was coming up that path going to town, he took and come across the road and hollered at us, . . walked up to us and said, 'Don't you all love roasting-ears?' We said yes. . . Then he asked me if I did not love roasting-ears, and I told him I did, but I didn't want any that afternoon. He said to me that he heard somebody say that I was going to make him eat roasting-ears the next time I saw him. I asked him who told him that, and he said two

women; and about that time these two women turned and went off; and as soon as they turned off he turned to me and says, 'Jim, let's go up town and get drunk and raise hell.' I says, 'No, I can't do that,' and then he says, 'I am going up there and raise hell. Sheriff Rogers is up there with a warrant for me, but damned if he can arrest me. Damned if sheriff Rogers can arrest my baby boy.' I was walking along, and had my pistol in my side pocket; and he says, 'Let me see that pistol.' I told him no, that he could not have it; and he tried to snatch it out, and got hold of the handle; and when he could not get it away from me he backed off a little piece and threw his gun on me and began to cock it and say, 'Throw down that pistol, God damn you, or I will kill you in the twinkling of an eye,' and I said no; and he said, 'I will kill you if you just bat your eyes, God damn you.' Then I slapped his gun and shot at the same time. When I shot him the first time I didn't want to kill him; and when I shot him he fell to his knees, and he was trying to get up with his gun; and while he was trying to get up I shot him again. He was already up on his knees when I shot him the second time; and that is the reason I took his gun and went on off. I didn't know whether he was going to shoot or not. I shot him because I was scared of him. He was a desperado, and that was his business — to shoot people."

The court charged the jury, among other things, thus: "If you believe that at the time of the killing Bowen was advancing on him with a deadly weapon, and that all the circumstances were sufficient to excite the fears of a reasonable man that a felony was about to be committed on his person, and that the party killing acted under the influence of those fears and not in a spirit of revenge, then the killing would be justifiable." It was alleged, in one ground of the motion for a new trial, that the use of the word "advancing," in this connection, tended to mislead the jury (there being no evidence of any advance), and was susceptible of the construction that, in order for the defendant to have been justified in the killing, the deceased must have been actually advancing upon him and he retreating.

*Herrman & Highsmith*, for plaintiff in error. *J. M. Terrell, attorney-general*, and *J. F. DeLacy, solicitor-general*, contra.

COBB, J. The accused was convicted of murder, and sentenced to

be hung.    Having made a motion for a new trial, which was over-ruled, he excepted.

1. Complaint is made that the court erred in giving the following charge: "If you believe that at the time of the killing" the deceased "was advancing on" the accused "with a deadly weapon," etc., " the killing would be justifiable." This charge was error, for the reason that it was calculated to impress upon the minds of the jury that the accused would not be justified in taking the life of the deceased unless the deceased was advancing upon him, when there were circumstances referred to in the statement of the accused which, if believed by the jury, would have authorized the killing of the deceased, notwithstanding the fact that at the time of the killing the deceased was not advancing upon the accused. The judge having on his own motion, without any request so to do, undertaken to charge the law applicable solely to a theory of the case as raised by the prisoner's statement, the charge so given should have been accurately adjusted to the facts of the case as made in the statement.    *Ragland* v. *State*, 111 *Ga.* 211.

2. It is always with reluctance that this court orders the verdict of a jury set aside, but we do so in this instance with less reluctance because it is clearly apparent from the record that the entire truth of the transaction has not been brought to light.    There is so little evidence as to the real reason and motive which actuated the accused in killing the deceased, and the knowledge of the eye-witnesses, who were some distance away, was so limited as to this matter, that we can not help but feel that, whether the accused is guilty of murder or not, something yet remains to be told.    We send the case back for a new trial, in the hope that the real truth of the matter may be fully developed.

*Judgment reversed.    All the Justices concurring.*