25623. GOLDSMITH *v.* THE STATE.

DECIDED SEPTEMBER 23, 1936.

*R. L. LeSueur,* for plaintiff in error.
*Hollis Fort,* solicitor-general, contra.

MacIntyre, J. Berta Mae Goldsmith was indicted for committing murder on November 4, 1935, in Sumter County, Georgia, by "striking, beating, and cutting . . Northern Goldsmith with an ax." The jury found the defendant guilty of voluntary manslaughter. The exception is to the overruling of her motion for new trial containing the general and two special grounds. The deceased was the defendant's husband. He was found dead "down in the woods," with wounds on and about his head that appeared to have been inflicted with an ax which was found near the body, and which had blood on it. The body was not rigid, and the victim appeared to have been killed recently. There was a little puddle of blood about four feet from his head. Press Anglin testified, in part: "I did not see nothing around where I saw his body but a little old pine tree, . . an old half of a pine cut down. . . There were some chips there; there was no wood cut. Where they cut in the butt part of the tree the two limbs were cut there. . . I saw no other weapon at all besides the ax down there. . . The ax was lying by a limb. . . It looked like there had been a scuffle there. . . I found no stove wood cut there. . . I disremember now whether or not I saw any piece of a tree that had been cut off from the rest of the tree lying on the ground. The pieces of limb that I was talking about seeing there were long pieces, something like three feet long. They were as big as something like that. . . I reckon I could take one of those pieces of limb and hit a person hard enough with it to kill him." Deputy sheriff Chappel testified, in part: "I went down there and found the body by a pine top where the timber had been cut and the old top . . left there. . . A man could kill another with a piece of wood three feet long and that big in diameter. I don't know how much strength that negro had, but from his looks I would say that he could have killed his wife with a piece of wood like that. He could have killed her with the ax. . . I asked her why she killed Goldsmith, and she said he told her he was going to kill her about a negro by the name of Jackson, and she just killed him before he made any attempt to kill her. She said she killed with an ax. . . I asked her the question if he attempted to hit her, and she said he did not; that he just said he was going to kill her, and did not have anything to hit her with, and she hit him with the ax."

Sheriff McArthur testified substantially as did Chappel, as to the statement made by the defendant in regard to the homicide. In her statement to the jury, the defendant said, in part: "My husband ask me to go down in the woods with him, and after we got down there he told me he was going to kill me. . . He said he heard something about me. . . I would not have killed him for nothing if I had not thought he was going to kill me. He told me he was going to kill, and drawed back to hit me with the ax, and I snatched it from him and took it away from him, and he reached down and got a piece of wood to hit me with, and I hit him before he hit me with the wood. . . I would not have killed him for nothing if he had not been trying to kill me."

We shall only say, in regard to the evidence bearing upon the defendant's sanity, that the jury was warranted in finding that she knew the nature and quality of her acts at the time of the killing, and that she was responsible for them. But it is urged in the first special ground that the court erred in charging the jury the law of voluntary manslaughter because there was nothing in the evidence or the defendant's statement to warrant such a charge. It is also insisted that the evidence does not support the verdict of voluntary manslaughter. "When a defendant is put upon his trial for murder, and there is any doubt as to the grade of homicide of which he is guilty, it is the duty of the court clearly and distinctly to instruct the jury as to the law, defining the several grades of homicide, as recognized by the Penal Code, and then leave it to the jury to find from the evidence of what particular grade he is guilty." *Crawford* v. *State*, 12 *Ga.* 142 (6). In *Jackson* v. *State*, 76 *Ga.* 473, 478, it was held that "where there is evidence sufficient to raise a doubt, however slight, upon the point, whether the crime be murder or manslaughter, voluntary or involuntary, the court should instruct the jury upon these grades of manslaughter as well as murder." *Wynne* v. *State*, 56 *Ga.* 113, was cited to support the above statement. In *Strickland* v. *State*, 133 *Ga.* 76 (65 S. E. 148), the foregoing decisions were approved. In *White* v. *State*, 27 *Ga. App.* 194 (107 S. E. 890), this court said: "It is not error, on the trial of one indicted for murder, to instruct the jury upon the law of voluntary manslaughter, where, from the evidence or from the defendant's statement to the jury, there is *anything deducible* which

would *tend* to show that the defendant was guilty of manslaughter, or which would be sufficient to raise a *doubt, however slight,* as to whether the homicide was murder or manslaughter. . . In determining whether the homicide was murder or manslaughter, it is the prerogative of the jury to believe certain parts only of the defendant's statement and to combine those parts with certain parts only of the evidence." To the same effect is *Bacon* v. *State,* 27 *Ga. App.* 37 (107 S. E. 346). The *Jackson* case, supra, was cited in both the *White* and the *Bacon* cases. The distinguishing feature of voluntary manslaughter is that it must be done in hot blood, without malice or deliberation. "In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. . . The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible . . ." Code, § 26-1007. In an interesting discussion of voluntary manslaughter in *Ragland* v. *State,* 111 *Ga.* 211, 215 (36 S. E. 682), the court said: "It is not necessary that there be some actual assault, some attack, some attempt to do a violent injury on the person killing, in order to reduce the offense. If there are other equivalent circumstances to justify the passion, the offense may be reduced. . . For instance, if the jury were to believe that a rapid advance by one man armed with a stick upon another indicated an intention to do the latter some serious bodily harm when he should have arrived at a point sufficiently near, they might well determine these circumstances to be the equivalent of an assault on the person being advanced upon." See *Jenkins* v. *State,* 123 *Ga.* 523 (51 S. E. 598), in which was cited the *Ragland* case, and numerous other cases bearing upon the question of the reduction of murder to manslaughter; also *Rumsey* v. *State,* 126 *Ga.* 419 (55 S. E. 167). It might be interesting to compare the facts of the case of *Monroe* v. *State,* 50 *Ga. App.* 291 (177 S. E. 836), with those of the instant case—particularly the defendants' statements as to the actual happening of the homicides. Our view is that the facts and circumstances of the instant case made it a striking example of a case where the jury, under proper

instructions from the court, should have determined the defendant was guilty of the lesser crime of voluntary manslaughter. We therefore hold that the evidence supports the verdict, and that the court did not err in charging the jury upon the subject of voluntary manslaughter.

The second, and last, special ground complains that the court did not give to the jury the following requested charge: "I charge you . . that the presumption is that the defendant . . acted under the fears of a reasonable woman, and not in the spirit of revenge, if the circumstances surrounding the killing of her husband, as shown by the evidence in this case, were such as to excite those fears.". The court charged the pertinent parts of the Code, § 26-1011 (Penal Code of 1910, § 70), and also charged Code, § 26-1012 (1910, § 71). The court also instructed the jury upon the law applicable to "an apparent necessity" to kill. Our view is that the court's charge upon "reasonable fears" was sufficiently full and fair, and that it was not error to refuse to charge in the language of the request. Indeed, it occurs to us that the phrase, "as shown by the evidence in this case," might be misunderstood by the jury. However, in any event, a refusal to charge upon a principle of law which is solely applicable to the crime of murder can not be a ground for reversing the judgment where the conviction is of voluntary manslaughter, which is tantamount to an acquittal of the charge of murder. *Jordan* v. *State,* 22 *Ga.* 545 (9); *Mitchell* v. *State,* 39 *Ga. App.* 100 (2) (146 S. E. 333), and cit. In the *Jordan* case, the Supreme Court said: "He was indicted for murder. The jury found him guilty of voluntary manslaughter. The finding acquits him of the charge of murder; and however contrary to law it may be, the court cannot grant a new trial, so as to subject him to a trial for the offense of which the court may believe him to be guilty." See also *French* v. *State,* 43 *Ga. App.* 97 (157 S. E. 902), where this court, applying the principle announced to the introduction of evidence, said: "Where one on trial for murder is convicted of voluntary manslaughter (such conviction being equivalent to an acquittal of the charge of murder . .), the erroneous admission of illegal evidence tending to show that the homicide was murder is not cause for a new trial." We hold that the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*