32056. GRAY *v.* THE STATE.

Decided October 7, 1948.

*Duke Davis, H. E. Richter, Walter D. Sanders, C. A. Cranford,* for plaintiff in error.

*L. M. Wyatt, Solicitor-General, Myer Goldberg,* contra.

MacINTYRE, P. J.   Tyre Gray was indicted for the murder of Hope Ball, and was found guilty of voluntary manslaughter. He made a motion for a new trial on the general and one special ground, which was overruled; and he excepts to the judgment denying him a new trial.

■   During the trial Robert Davenport testified: "My station where I was working the 2nd of August was Guy Duncan's, between LaGrange and Greenville Streets.   I know the defendant here.   I saw him on that day.   I couldn't say what time it was, but it was after dark.   He had a pistol.   He flashed it around there and stuck it in another fellow's stomach.   I don't know who the other fellow was, but he had two boys with him.   I couldn't say how long it was after that before you heard of this shooting of Hope Ball.   Tyre Gray wasn't sober, I would say he was drunk, he wasn't sober.   He had been drinking."   The court admitted this evidence over the objection of the defendant then urged, that "The evidence was not relevant, but in fact was irrelevant and immaterial, and that the same happened at a different place from the situs of the present homicide, and took place at an altogether different time from that for which the movant herein is being tried."

The other evidence in the case shows that, while the occurrence referred to in this testimony happened in a different place, it took place in the same vicinity or town after dark on the same night on which the killing occurred later at about 9:00 p. m. The evidence here objected to was a circumstance tending to show that the defendant was under the influence of intoxicants at the time of the homicide.   Such evidence was not too remote as to time or place; and was not subject to the grounds of objection urged.   *Booth* v. *State,* 198 *Ga.* 648 (2)   (32 S. E. 2d, 303) ; *Crumbly* v. *State,* 141 *Ga.* 17 (1)   (80 S. E. 281) ; *Burgess* v. *State,* 93 *Ga.* 304 (4)   (20 S. E. 331).

Later in his special ground of the motion for a new trial, the defendant for the first time objected to this evidence on a second ground, that "The said evidence was material, prejudicial, and hurtful to the movant for the following reasons: the State was

attempting to prove that the defendant was a bad character, was drinking at the time of the homicide, was carrying a dangerous weapon, and was habitually threatening the lives of others with this dangerous weapon; and that the admission of this testimony as to events occurring at another time, place, and between other parties than the defendant and the deceased, influenced the jury to believe that the defendant was a dangerous character, was looking for someone to kill, and did in fact kill someone not in self-defense, as pleaded by said defendant." Even if this objection had been timely made, it would not have been meritorious, and the evidence was admissible in a trial under an indictment for murder to show or illustrate the defendant's state of mind, intention, and malice. *Shafer v. State*, 191 *Ga.* 722, 727 (13 S. E. 2d, 798); *Lewis* v. *State*, 196 *Ga.* 755, 759 (27 S. E. 2d, 659). This special ground is not meritorious.

■ Assigning error on the overruling of his motion for a new trial on the general grounds, the defendant says that there was no evidence introduced at the trial which would authorize the jury to find him guilty of voluntary manslaughter. There was evidence to the effect that both Gray, the defendant, and Ball, the deceased, had been drinking on the evening of the killing, prior to the time of their encounter at about 9:00 p. m., and that the defendant had a pistol, which he "flashed" around, sticking it in the stomach of other persons. There was also evidence to authorize the jury to find that the defendant came to the service station of Hugh Eidson and Doyal Goodroe at about 9 as the station was being closed for the night, and asked to use the phone; that the deceased came in as the defendant was phoning and asked for some cigars; that the deceased displayed a large "roll" of bills, and the defendant challenged the deceased to "shoot" (with dice) for the money; that after some discussion, during which the defendant drew his gun and said, "The last time I shot dice I had to shoot a man and it cost me $350," the deceased and the defendant engaged in a game of chance by "flipping" for various sums; that out of this "flipping" arose a disagreement between them, as a result of which the deceased cursed the defendant several times and the defendant retired to the truck in which he had arrived at the service station and got in.

Hugh Eidson testified in part: "Hope Ball called him that

ugly name. My brother-in-law asked Hope not to curse before my wife. . . Hope went up to the truck. There had not been a shot fired until after Hope leaned in the truck. [The truck had no doors.] At the time the thing happened Gray had the same plaster of Paris cast on his arm that he has now. . . Hope Ball weighed around 225. Gray weighed 175 pounds. . . Hope [cursed] the defendant three times. . . Up to that time I had never heard Gray utter an abusive word. He never did curse. To my knowledge Gray did not threaten Hope Ball. Gray left Hope standing in front [of the service station] up there and went to his truck. Ball went out to the truck. He leaned over in it. . . After the shooting was over this man and Hope Ball were out on the ground together. The defendant got up and kinder staggered around. . . When he got his equilibrium he asked me to call the law. . . If he [Hope Ball the deceased] did have a gun, knife, or any kind of a weapon, I didn't see it. To my knowledge he did not have anything to defend himself with. . . I didn't hear any struggle or commotion before that shot was fired if there was any. I was [not over 20] feet from them."

Doyal Goodroe testified: "I didn't see any gun on Hope. I didn't see him have a knife. I didn't see any weapon of any kind [except the defendant's gun]. . . I told Gray to put his pistol up and he put it up. I know that he left Hope Ball some 25 feet and went and got in his truck. I know that Ball was cursing Gray. . . I did not hear Gray say anything to Hope Ball at the time Hope Ball was cursing Gray. The next thing that occurred Gray had gone to his truck and Hope Ball had gone up and leaned in the truck. He had his arms in the truck. . . It wasn't until he reached his arms in the truck, leaning in there that a shot was fired. . . I didn't hear any scuffle."

Several witnesses testified that Ball had been shot three or four times. Velma Page testified for the defendant: "I work at Newnan Hospital. . . I work at night. . . I was working there the night Mr. Hope Ball was brought in there. . . [Mrs. Robertson, the nurse] was talking to him, and I heard the conversation. He said, wasn't any use to do nothing to him because he was dying. She asked him who shot him. He said he didn't know the guy who shot him. He said he had been drunk and

he never knew what happened. . . That is Mr. Ball. He said he grabbed him and he grabbed the wrong man." Mrs. Robertson, the nurse, testified: "[Mr. Hope Ball] said he was going to die. He was actually dying. I wouldn't say he made a direct statement to me. I heard him talking about it. He said if he hadn't been drunk it would not have happened, and he said he wished they would give the man another chance."

The defendant in his statement to the jury said: "We flipped twice and he won. He says, 'We will make it fifteen dollars.' I had to get my pocketbook out and took a five-dollar bill and a ten-dollar bill out. I saw him put down and I says, 'You ain't going to win with just a five-dollar bill.' I looked down and it was a one-dollar bill. I says, 'The bill you put down is a one-dollar bill.' He says, 'You are a God damn lie.' I turned around and went out and got in my truck. . . Just as I got over there and got straight, that man come up calling me son-of-a-bitch. He come up to the car and just reached over and grabbed around my neck with one hand and grabbed my shirt right here . . and tore it down to here. When he got to the truck he grabbed me by the throat with his right hand and taken his left hand and snatched at me and says, 'I will kill you.' . . He grabbed me here and pulled me over the running board. Just as I got down on the running board, my air was cut off. I couldn't make a sound, couldn't holler—pulled me over on the left-hand side and it was getting darker and darker, and I seen something had to be done and. I commenced shooting him. I shot him I don't know how many times."

Thus, in his statement the defendant said that he shot the deceased in self-defense, in that the defendant was choking him at the time he fired. There was some testimony to the effect that there were marks and scratches on the defendant's throat and that one of his eyes was blood-shot.

"A jury is authorized to believe a part of the defendant's statement, though the whole statement is not credible to them; and the same thing is true as to the testimony of each and every witness who appears before the jury." Wilson v. State, 9 Ga. App. 297 (2) (70 S. E. 1125). See also Reaves v. Columbus Electric &c. Co., 32 Ga. App. 140, 151 (122 S. E. 824); Sutton v. State, 123 Ga. 125, 127 (51 S. E. 316); Code, § 38-415. In making up their verdict, "it is the prerogative of the jury to believe certain

parts only of the defendant's statement and to combine those parts with certain parts only of the evidence." *Goldsmith* v. *State,* 54 *Ga. App.* 268, 271 (187 S. E. 694).

The jury accepted the theory of the State, as here urged, that the defendant was guilty of voluntary manslaughter, which they had a right to do. "In all cases of voluntary manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should have been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and be punished as murder." Code, § 26-1007.

The trial judge rendered an able charge to the jury upon the law of murder, voluntary manslaughter, and justifiable homicide, and no exception is made to his instructions. Under one phase of the evidence, which we have set out herein, the jury were authorized to find that the defendant, Tyre Gray, shot Hope Ball in hot blood, engendered by an assault made upon him by Ball, under such circumstances as would excite the fears of a reasonable man that some bodily harm, less than a felony, was imminent and impending; and thus they were authorized to find that the conduct of the deceased and the attendant circumstances were not sufficient to justify the killing, but only sufficient to excite the passion of the defendant so as to reduce the killing to voluntary manslaughter. *Davis* v. *State,* 68 *Ga. App.* 296 (4) (22 S. E. 2d, 762); *Henry* v. *State,* 56 *Ga. App.* 384 (192 S. E. 636); *Henry* v. *State,* 76 *Ga. App.* 139 (45 S. E. 2d, 230).

The facts of this case differentiate it from *Rutland* v. *State,* 46 *Ga. App.* 417 (167 S. E. 705). The evidence authorized the verdict, and the trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*