32658. WALKER *v.* THE STATE.

DECIDED OCTOBER 11, 1949. REHEARING DENIED NOVEMBER 9, 1949.

*Jule & A. C. Felton III,* for plaintiff in error.

*E. L. Forrester, Solicitor-General,* contra.

TOWNSEND, J. Annie Lee Walker was tried in the Superior Court of Macon County on an indictment charging her with the murder of Charlie Willis Lamb. She was convicted of voluntary manslaughter and her punishment fixed at two years in the penitentiary. She filed a motion for a new trial on the general grounds only, and her exception is to the judgment of the trial court overruling the same.

The contention of the defendant was that she shot the deceased, but that she was justified in so doing because at the time of the shooting he was attempting to commit an assault upon her with intent to rape her. Her theory is borne out by the statements that she made to various persons after the shooting and her statement to the jury on the trial of her case. Part of her statement was wholly discredited by the physical facts. It is a well-settled principle of law that the jury is authorized to believe a part of the defendant's statement, though the whole

statement is not credible to them. See *Gray* v. *State*, 77 *Ga. App.* 751 (49 S. E. 2d, 829).

In passing on a motion for a new trial on the general grounds only, that view of the evidence most favorable to the State must be taken, for every presumption and every inference is in favor of the verdict. See *Morgan* v. *State*, 77 *Ga. App.* 517 (48 S. E. 2d, 681) and cases there cited.

The view of the evidence here most favorable to support the verdict is in the record both in the nature of a dying declaration and in a statement made by the deceased in the presence of the defendant under circumstances which would have required an answer or denial under Code § 38-409, but to which the defendant offered no contradiction. This occurred after the shooting when the defendant was brought before the deceased in the hospital by the arresting officer and concerning which the arresting officer testified:

"I told Annie Lee Walker before I took her in the room where he [the deceased] was I was going in there and let him make a statement in her presence; that was after I got to the hospital with her; I told her she could hear it and if it was not true she could deny it; that statement was made in the presence of Mr. Cox, Joe Lamb, Charlie Willis' mother, and Mr. Harp; I will read what Charlie Willis Lamb said in this defendant's presence; it was about nine-thirty when this was taken; he said, 'This is the girl who shot me; I think this is the gun she shot me with; I don't know why she shot me; I carried her up to Daniel's house; when she got out of the car I asked her for a date; she said no; I then told her to pay me for bringing her up there and she asked me how much and I told her either fifty cents or two gallons of gas; she said she was not going to give me no date or pay anything; by this time I had gotten out of my car and she was coming around the back of it; I told her, oh, yes, you will pay me or give me a date; she said, 'Charlie, I will shoot you'; I thought she was playing and about that time she shot me, shot me about five times; I was at Daniel's front door beside my car; after she shot me I fell by the side of my car and started vomiting; I wasn't doing anything to her; I didn't run her around the house with a knife; I am sure she did not shoot me around the house by the chimney, she shot me at Daniel's front door be-

side my car; I did not try to run over her with my car; I never backed up or moved my car after I got there; I carried Mr. Robert Hill to the doctor late this evening, when I brought him back home she came out of his house and asked me to take her to Daniel's house; she said she would pay me; we stopped between her home and the Daniel's house, at the forks of the Underwood road; I didn't do anything to her; I asked her for a date and she refused me and then I cranked up my car and drove to Daniel's house; I am sure I did not stop any more on the way; I did not threaten her with a knife or try to pull her breeches off; I did not know she had a pistol until she began shooting; I did not run, I thought she was playing until she shot me.' All this was said in the presence of the defendant, Annie Lee Walker; at the conclusion of what was said there, Annie Lee Walker did not dispute any part of that statement; she did not say anything; I asked her about it but she did not say anything; her head was down and she at no time denied it up there at that hospital."

That part of the foregoing testimony of the deputy sheriff setting forth the statement of the deceased that was made in the presence of the defendant, and which the defendant failed to deny, was also qualified by other circumstances as a dying declaration.

Aside from this, there is evidence that the deceased was found critically wounded at the scene of the shooting; that his body was perforated by pistol bullets; that he was taken to the hospital and later died from these wounds.

The defendant also stated to the jury that as the deceased drove her in his car to the home of M. C. Daniel he stopped twice on the road, put his arm around her and proposed sexual intercourse, and that on each of these occasions she refused to comply with his request.

Assuming that the jury exercised its prerogative to believe a part of the defendant's statement as well as the account given by the deceased as herein outlined, the jury was authorized to find that the facts and circumstances at the time the accused killed the deceased were such only as would excite the fears of a reasonable person that some bodily harm, less than a felony, such as again putting his arm around her and importuning her to

commit sexual intercourse with him, was imminent and impending. The jury therefore was authorized to find the defendant guilty of voluntary manslaughter under this theory of the case. See *Henry* v. *State*, 76 *Ga. App.* 139 (45 S. E. 2d, 230).

The evidence would also authorize the jury to find that on account of these continued proposals and the continued insistence on payment for her transportation, the defendant became angry at the deceased, and in a sudden violent impulse of passion fired the fatal shots. See Code, § 26-1007.

The jury was authorized to conclude from the evidence and that part of the defendant's statement which was apparently accepted, that the circumstances were such that there was no actual or apparent necessity to slay to prevent a felony from being committed upon her, but that the circumstances were such as to engender the hot blood of the defendant, and that, while under its influence, she fired the shots. See *Albert* v. *State*, 70 *Ga. App.* 39 (27 S. E. 2d, 249).

The jury was also authorized to find the homicide entirely justifiable and acquit the defendant. However, it took the opposite view by returning a verdict of guilty of voluntary manslaughter, and this verdict, being supported by some evidence and having the approval of the trial court, will not be set aside.

*Judgment affirmed. MacIntyre, P. J., and Gardner, J., concur.*