## 32589. MILLER *v.* THE STATE.

Decided October 28, 1949.

*Duke Davis, Horace E. Richter*, for plaintiff in error.
*Wright Lipford, Solicitor-General*, contra.

MacIntyre, P. J. (After stating the foregoing facts.) The evidence showed that it was the defendant's knife that cut the strap to which the prosecutor's pocketbook was attached, that in the store building in question, after the prosecutor in the presence of the defendant had displayed $500 or $600 in his pocketbook when he opened it up and went through the bills and took out a one dollar bill to pay for a hamburger, the defendant was talking to him, that he stood there and talked "a little bit," that he had his knife in his hand and laid his arm on the right shoulder of the prosecutor while the prosecutor was eating the hamburger and that the prosecutor pushed the defendant's arm down. The prosecutor paid for the sandwiches, and Pete Prather, Carl Ray, Johnnie McGehee and Red Smith were playing dominoes. Pete asked the prosecutor to come over there and play with him. "He would like to beat him." The prosecutor went over there and played one game. The defendant was still in the store, but not in the domino game. The prosecutor laid down the dominoes and told Pete he had to go and started out the store to go to the latrine. Pete went with the prosecutor out of the store, and the defendant was not then in the domino game, but nevertheless immediately followed behind the prosecutor. Carl Ray followed behind the defendant. The defendant was right up against the prosecutor. James Worley and Johnnie McGehee were in the latrine. Red Smith, who was in the domino game, did not follow the prosecutor to the latrine. Pete Prather had some whisky and was going to take a drink and asked the prosecutor if he wanted one. The prosecutor told him "No." The defendant at that time came right up to the side of the prosecutor, the side his pocketbook was located on.

They, not the prosecutor, drank whisky. Then James Worley walked out in front. They had a car standing out there, and Pete Prather stopped and talked about a minute. James Worley said to Pete Prather "You bring Johnnie on. We are going." Carl Ray, Worley and Luther Miller, the defendant, got in the car and went up the road returning in five or ten minutes. When the prosecutor started back inside the store he saw his pocketbook strap hanging down. He said "Somebody got my pocketbook." The strap was cut and the pocketbook was missing. The prosecutor then said to the proprietor of the business "Some of them in there got it. Let's search them." However, they thought it best to notify the officers. The officers came and searched all of the suspects.

While there was evidence that other persons at various times between the time the prosecutor opened his pocketbook which was attached to a strap, paid for the hamburger, and returned the pocketbook to his pocket and the time he was returning from the latrine and noticed that his pocketbook strap was hanging down and the pocketbook had been stolen were in proximity to the prosecutor, yet the defendant's knife was the one that cut the strap that enabled the pocketbook to be removed. The defendant seems to have been the one always closest to the prosecutor as the prosecutor was leaving the building to go to the latrine and while the prosecutor and the others were actually in the latrine. Indeed the prosecutor testified that while they were in the latrine the defendant was right up against him and immediately after they left the latrine the defendant and two of the others entered a car and went up the road but returned in five or ten minutes. It might have occurred to them that their leaving under the circumstances would be suspicious, but that if they were to depart and conceal the money and pocketbook and return quickly, although there would be a search of those suspected, the absence of the money on their person would tend to divert suspicion from any of them.

The evidence of the defendant's witnesses tended to support in part his statement to the jury. Even if the other persons above referred to were in various degrees of proximity to the prosecutor on the occasion in question, the evidence shows that the defendant had a greater opportunity to cut the strap and

steal the pocketbook. Furthermore, the evidence shows that it was the defendant's knife that did the cutting of the strap which was attached to the pocketbook. The fact that one of the defendant's witnesses testified merely that between the time of the purchase of the hamburger and before the time the prosecutor and the others above referred to left to go to the latrine, Red Smith, for the purpose of opening some chicken feed, had borrowed the knife of the defendant, and had gone into the kitchen where the prosecutor happened to be and returned the knife before the prosecutor left to go to the latrine would not change the situation, for the evidence was sufficient to authorize and to satisfy the jury beyond a reasonable doubt that the strap was cut while the prosecutor was going to or at the latrine and the defendant was guilty. The mere possibility that someone might have been in proximity to the prosecutor does not overcome the evidence which satisfied the jury of the guilt of the accused beyond a reasonable doubt. *Hicks* v. *State,* 66 *Ga. App.* 577, 582 (18 S. E. 2d, 637). Moreover, the statement of the defendant to the jury with reference to the loan of his knife to Red Smith still would not change the situation. However, it is the rule that in making up their verdict it is the prerogative of the jury to believe only certain parts of the defendant's statement and to combine those parts with only certain parts of the evidence which they believe. *Gray* v. *State,* 77 *Ga. App.* 747, 751 (49 S. E. 2d, 829). The jury accepted the theory of the State and found the defendant guilty of larceny from the person. Although the evidence was circumstantial, we think that it warranted the verdict.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*