33069. COTTON *v.* THE STATE.

DECIDED JUNE 7, 1950.

*Thomas J. Brown Jr.,* for plaintiff in error.
*Benjamin B. Garland, Solicitor-General,* contra.

TOWNSEND, J.   J. C. Cotton was tried in the Superior Court of Henry County for the offense of murder. He was convicted of voluntary manslaughter and sentenced to serve a term of 10 years in the penitentiary. He made a motion for a new trial on the general grounds and one special ground in which he contended that the trial court erred in submitting to the jury in charge the law of voluntary manslaughter. To the judgment overruling this motion for a new trial as amended he brings error.

Since both the general grounds and the special ground involve the single question of whether or not the evidence is sufficient to authorize the conviction of the defendant for the offense of voluntary manslaughter, they are here considered together. It is contended by counsel for the defendant that the

evidence of the State demands a verdict for murder on the one hand, while on the other hand the evidence of the defendant demands a finding that the killing was justifiable as being done in self-defense. The State put the wife of the deceased on the witness stand and she testified in substance that in the early morning hours she and her husband, who had been out together until this late hour, stopped at the home of the mother of the witness and found there engaged in a card game the deceased and a number of other persons; that the defendant engaged in the card game along with the others until about daybreak when the game broke up; that the participants in the game were playing only for pleasure; that there was no gambling; that there was no quarrel whatever between the defendant and the deceased or anyone else present; that the deceased had no pistol in his possession on this occasion; that after the card game broke up the deceased reminded the witness that it was time for them to go; that as he turned toward the door to leave the room the defendant, without any cause whatever, shot the deceased with a pistol and killed him. The State also put a deputy sheriff on the witness stand who testified in substance that he investigated the killing shortly after it occurred; that he had been called to the scene by the employer of some of the participants in the card game; that a pistol was turned over to him by this person; that he talked to the defendant who had been taken into custody by the employer; that the defendant freely and voluntarily told the witness that he and the deceased had been gambling at cards; that he won the last hand and was entitled to the $7 that was on the table; that the deceased picked up the $7 and they engaged in a quarrel about it; that the deceased then drew a pistol; that he then drew his pistol, managed to shoot the deceased before he was himself shot, and that therefore he was acting in self defense. The defense put on the employer of at least one or more of the participants of the card game and an associate of his who testified in substance that they were notified of the shooting immediately after it happened; that they in turn notified the sheriff's office; that they then located the defendant and turned him over to the deputy sheriff; that they also located a brother of the defendant who was present at the shooting from whom they procured a pistol

that was said to have been in the possession of the deceased at the time he was killed. The defendant also put on two of the participants in the card game, one of whom was the brother of the defendant. These witnesses testified in substance that upon the completion of the card game the final hand was won by the defendant; that he was entitled to the $7 which was on the table and for which the defendant and the deceased had gambled at cards; that the deceased picked up the money; that the defendant demanded it; that the deceased drew a pistol and that the defendant then drew his own pistol and fired, killing the deceased. They also testified that immediately after the shooting they left the premises and that the brother of the defendant in going out picked up the pistol that had been dropped by the deceased. He turned this pistol over to the employer, who in turn delivered it to the deputy sheriff. The defendant's statement also substantially repeated what he had told the deputy sheriff and was in accord with the testimony of the two witnesses who were present at the killing.

It is a well-settled principle of law that in determining whether the homicide was murder or manslaughter, it is the prerogative of the jury to believe certain parts only of the defendant's statement and to combine those parts with certain parts only of the evidence. *Goldsmith* v. *State,* 54 *Ga. App.* 268, 271 (187 S. E. 684). Also where there are conflicts in the testimony of witnesses, it is the duty of the jury to reconcile these conflicts if possible so as to make every witness speak the truth. However, if this can not be done, it then becomes the duty of the jury to believe those whom they think most entitled to credit. *Stiles* v. *State,* 57 *Ga.* 184 (5). Also in cases of such conflict the jury, being the exclusive judges as to the credibility of the witnesses as provided by Code § 38-1805, it is within their province, in case of conflicts in the testimony such as here exist, to believe parts of the testimony of some witnesses and parts of the testimony of other witnesses while rejecting other parts of the testimony of each. See Code § 38-1806, wherein it is provided in part as follows: "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury."

Applying these rules, the jury was also authorized to find

756

from the testimony of the widow of the deceased that the deceased was himself unarmed at the time he was killed, and at the same time discredit other parts of her testimony. The jury was also authorized to find from the testimony of the two defense witnesses who were present and from the statement of the defendant himself that the defendant and the deceased had been gambling, that they engaged in a quarrel and that as a result of this quarrel the defendant shot the deceased, killing him, and at the same time reject other parts of the testimony of these witnesses and other parts of the statement of the defendant. These findings are in no way precluded by the testimony of the other witnesses in the case.

Voluntary manslaughter, as provided in Code § 26-1007, is a killing which results from that sudden violent impulse of passion supposed to be irresistible. From the foregoing evidence the jury was authorized to find in this case that the defendant became suddenly so angered at the deceased for picking up money for which they had gambled, and which had been won by the defendant, that he was seized with a sudden, violent impulse of passion and that while under its influence he shot and killed the deceased, who was at the time unarmed. The jury was also authorized to find that the picking up of the money by the deceased which the defendant had won from him amounted to circumstances which could justify the excitement of such a passion and which could exclude all idea of deliberation or malice. It follows that the verdict is supported by the evidence. The trial court did not err in submitting to the jury in charge the law of voluntary manslaughter.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*